

NUMBER 13-12-00356-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| JERILYN ANN CERDA, AS NEXT FRIEND OF NOEL DOE, | Appellant, |
| v. | |
| RJL ENTERTAINMENT, INC. D/B/A CLUB CHEETAH, | Appellee. |

### On appeal from the 319th District Court of Nueces County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Longoria**
**Opinion by Justice Benavides**

This appeal arises out of the trial court's granting of special exceptions and

subsequent dismissal with prejudice of certain causes of action asserted by appellant

Jerilyn Ann Cerda ("Cerda"), as next friend of Noel Doe ("Noel"), against RJL Entertainment, Inc. d/b/a Club Cheetah ("Club Cheetah"). By one issue, Cerda asserts that the trial court erred in granting Club Cheetah's motion to dismiss and sever based on special exceptions. We affirm, in part, and reverse and remand, in part.

## I.   BACKGROUND

Cerda alleged the following facts in her second-amended original petition to the trial court: kidnappers, Leslie Campbell and an unknown driver, abducted fourteen-year-old Noel outside of a San Antonio, Texas homeless shelter on March 23, 2009. Noel lived at the shelter with her family due to her parents' recent unemployment. Later, Campbell and the unknown driver drove Noel to a home in San Antonio, where Campbell assaulted her. The next day, Noel was taken to an apartment in San Antonio where she met a couple, Raquel McIntosh and Alvin Robertson. McIntosh gave Noel "provocative clothes to wear" and thereafter charged various men to sexually assault Noel. During her kidnapping, Noel was taken to "multiple locations" throughout San Antonio and Corpus Christi, Texas.

At some point during the ordeal, Campbell took Noel to Club Cheetah, a sexually-oriented business in Corpus Christi, Texas. At the club, Noel presented a false identification card to Club Cheetah's manager, Jeffrey Shawn Martinez, which belonged to another woman who was approximately eight years older than Noel. Cerda asserts in her petition that "[l]ikely due to [Martinez's] and [Campbell's] personal relationship, [Martinez] failed to properly scrutinize [Noel's] false identification." As a result, Noel stripped for money. Cerda states that patrons of Club Cheetah touched Noel while she

2

performed topless lap dances on them and that Noel was encouraged by Club Cheetah's DJ to remove her bra and expose her breasts to the patrons. Stated another way, Cerda contended that by dancing topless for the "entertainment and sexual gratification" of Club Cheetah's patrons, she was the subject of sexual exploitation for profit by the club.

On March 30, 2009, Noel escaped from her captivity while Campbell showered. Cerda alleges that as a result of Club Cheetah's actions, Noel suffered "bodily injury and sickness including . . . lost peace of mind, depression, neurosis, nervousness, weight fluctuations, nightmares, irritability, upset stomach, pains in her stomach, sleep loss, and/or anxiety." Cerda asserted various causes of action in her lawsuit against all of the defendants. As to Club Cheetah, Cerda alleged negligence, negligence per se, and grossly negligent infliction of emotional distress. Cerda invoked the doctrine of respondeat superior as to Martinez's actions as an employee or vice principal of Club Cheetah.

Specifically, Cerda alleged that Martinez had a duty to exercise ordinary care and breached that duty in one or more of the following ways:

(1) Failing to ensure the age of adult oriented dancers;

(2) Allowing the exploitation of Noel while acting in the course and scope of his employment with the Club; and

(3) Failing to ascertain the accuracy of Noel's age;

With regard to Club Cheetah, Cerda asserted various acts of negligence, including:

3

(1) Failing to properly train employees regarding the appropriate methods and procedures for ensuring that topless dancers are of the age of majority; and

(2) Failing to properly train employees to monitor the adult oriented business for underage patrons and dancers.

Cerda also asserted that Club Cheetah and Martinez's conduct constituted negligence per se under penal code sections 43.25 (Sexual Performance by a Child) and 43.251 (Employment Harmful to Children), as well as Corpus Christi Municipal Code section 48-10. *See* TEX. PENAL CODE ANN. §§ 43.25(c) (West 2011), 43.251 (West Supp. 2013); CORPUS CHRISTI, TEX., GEN. ORDINANCES ch. 48, art. II, § 48-10 (1996) ("Ordinance 48-10"). Alternatively, Cerda alleged a cause of action for gross negligence that proximately caused Noel's "highly foreseeable injuries," including mental anguish. Under these theories of recovery, Noel sought damages for personal injury, pain and suffering, and mental anguish in the past, as well as damages for personal injury, pain and suffering, and mental anguish that in reasonable probability will be suffered in the future. Noel also sought punitive damages.

On October 31, 2011, the trial court sustained the first set of special exceptions filed by Club Cheetah for Cerda's failure to plead a recognizable cause of action, but allowed Cerda to cure its purportedly defective pleading. Cerda repleaded and filed, with leave of the trial court, her second amended original petition. Club Cheetah filed a motion to dismiss and sever based on special exceptions, again asserting that Cerda failed to plead a recognizable cause of action. On February 28, 2012, the trial court

4

granted Club Cheetah's Motion to Dismiss and Sever based on Special Exceptions.[1] This appeal followed.

## II. STANDARD OF REVIEW

Although special exceptions are generally filed to force clarification of vague pleadings, they may also be used to determine whether a plaintiff has stated a cause of action permitted by law. *Mowbray v. Avery*, 76 S.W.3d 663, 677 (Tex. App.—Corpus Christi 2002, pet. denied); *see also* TEX. R. CIV. P. 91. When reviewing a trial court's dismissal of a cause based on the grant of special exceptions, we examine two distinct rulings: (1) the decision to sustain the special exceptions; and (2) the decision to dismiss the cause of action. *See Mowbray*, 76 S.W.3d at 678.

We review a trial court's order sustaining special exceptions for abuse of discretion. *Id.*; *see Holt v. Reproductive Servs., Inc.*, 946 S.W.2d 602, 604 (Tex. App.—Corpus Christi 1997, writ denied). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). If the decision to sustain the special exceptions was proper, we then review whether the decision to dismiss was appropriate. *See Mowbray*, 76 S.W.3d at 678.

The issue of whether a petition states a claim is a question of law. *Id.* In our review, we consider the issue *de novo* and take all allegations, facts, and interferences in

---

[1] After the severance, the trial court's ruling became a final and appealable judgment for purposes of our jurisdiction. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("[A]n appeal may be taken only from a final judgment.").

the pleadings as true and view them in a light most favorable to the pleader. *Id.* If the pleading does not state a cause of action, the trial court does not err in dismissing the entire case. *See Holt*, 946 S.W.2d at 605. With this framework in mind, we now turn to the issue raised before us in this appeal.

### III. DISCUSSION

Because Cerda's claims against Club Cheetah were dismissed for failure to state a cause of action, our review of the trial court's order sustaining the special exceptions turns on whether the pleadings state a cause of action. *See Mowbray*, 76 S.W.3d at 680 (holding that a trial court does not err in granting special exceptions and dismissing a cause of action for incurable pleading defects based on claims not recognized by law). Accordingly, we begin our analysis by determining whether Cerda's pleadings state a cause of action recognized by law.

#### A. Negligence

To establish negligence, a party must establish a duty, breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). As such, it is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. *Torrington Co. v. Stuzman*, 46 S.W.3d 829, 837 (Tex. 2000).

Cerda's pleadings allege claims of common law negligence and negligence per se against Club Cheetah. On appeal, Cerda argues that its negligence claims are based

upon a "general duty to avoid corrupting a minor," as well as several "specific duties" under the Texas Penal Code and the City of Corpus Christi Code of Ordinances.

Cerda does not direct this Court to any authority that imposes a general duty to "avoid corrupting a minor." TEX. R. APP. P. 38.1(i). Moreover, the Court's independent research has revealed no authority that addresses such a proposition. As a result, we conclude that the trial court did not err by dismissing Cerda's cause of action that was based on a general law duty to avoid corrupting a minor.[2]

## B. Negligence Per Se

We turn next to Cerda's argument that Club Cheetah breached three separate statutory duties amounting to negligence per se. Negligence per se is a tort concept whereby the civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person. *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978). All persons have a duty to obey the criminal law in the sense that they may be prosecuted for not doing so, but this is not equivalent to a duty in tort. *Perry v. S.N.*, 973 S.W.2d 301, 304 (Tex. 1998). Thus, the threshold question in negligence per se cases is whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent. *Id.* at 305; *see also Moughon*, 576 S.W.2d at 604.

Texas Penal Code section 43.25(b) (prohibiting the employment, authorization or inducement of a child to engage in sexual conduct or sexual performance), section

---

[2] Additionally, we note that Cerda does not ask this Court to recognize a new common-law duty to avoid corrupting a minor under the circumstances of this case. Absent such an invitation, we decline to do so *sua sponte*. *See* TEX. R. APP. P. 47.1.

7

43.251 (prohibiting the employment, authorization, or inducement of a child to work in a sexually oriented commercial activity or a place of business which permits, requests, or requires a child to work nude or topless), and Corpus Christi municipal ordinance 48-10 (prohibiting anyone under the age of eighteen to enter or be on the premises of a sexually oriented business) deal with the prohibition of allowing, employing, or inducing children to engage, view, or be within a certain proximity of businesses or activities that are sexual in nature. Noel, age fourteen at the time of these alleged activities, is within the class of persons whom these statutes and ordinance seek to protect. *See Coutta v. State*, 385 S.W.3d 641, 656 (Tex. App.—El Paso 2012, no pet.) (holding that the intent of section 43.251 is "to prevent the exploitation of children under the age of 18 years in the adult-entertainment industry"); *see also* House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1269, 65th Leg., R.S. (1977) (explaining that section 43.25(b) "protects minors from those who would exploit them for obscene purposes"); House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1904, 70th Leg., R.S. (1987) (explaining that this bill's purpose was to proscribe the employment of children in sexually-oriented businesses because such a provision is not provided anywhere in the other child labor laws); CORPUS CHRISTI, TEX., GEN. ORDINANCES ch. 48, art. II, § 48-1 (1996) ("The purpose of this chapter is to regulate sexually oriented businesses to promote the public health, safety and welfare of the citizens of Corpus Christi, and to establish reasonable and uniform regulations to prevent the concentration of sexually oriented businesses in the city."). Furthermore, Noel alleged at least some injuries that the Legislature and the City of Corpus Christi intended to prevent by prohibiting such

8

activities, including mental anguish and emotional distress that minors can experience in these situations. However, despite answering these threshold questions in the affirmative, we must still determine whether it is appropriate to impose tort liability for violations of a statute. *See Perry*, 973 S.W.2d at 305; *Praesel v. Johnson*, 967 S.W.2d 391, 395 (Tex. 1998). To consider whether imposing tort liability for violations of a criminal statute is "fair, workable, and wise," we look to a number of non-exclusive factors. *Perry*, 973 S.W.2d at 306. Stated another way, we will not apply the doctrine of negligence per se if the criminal statute does not provide an appropriate basis for civil liability. *Id.* at 304 (internal citations omitted). The Texas Supreme Court set forth the following factors for courts to consider in deciding whether to apply the doctrine of negligence per se:

(1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty;

(2) whether the statute puts the public on notice by clearly defining the required conduct;

(3) whether the statute would impose liability without fault;

(4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and

(5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Id.* at 309.

First, we consider the fact that absent a change in the common law, a negligence per se cause of action against Club Cheetah would derive the element of duty solely

9

from the penal code and the Corpus Christi code of municipal ordinances. In Texas, there is no general duty not to negligently inflict emotional distress. *See Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). The *Boyles* court made clear, however, that its decision does not affect a claimant's right to recover mental anguish damages caused by a defendant's breach of some other legal duty—i.e., negligent infliction of direct physical injury, wrongful death, battery, failure of a telegraph company to timely deliver death message, invasion of privacy, defamation, or negligent handling of a corpse. *Id.* Additionally, we are not directed to any other recognized common law duties that would apply to the facts of this case. Accordingly, the criminal statutes and ordinance invoked by Cerda does not supply the standard for an existing duty, but would create a new one. *See Reeder v. Daniel*, 61 S.W.3d 359, 367 (Tex. 2001) (analyzing whether to impose negligence per se liability for one minor providing alcohol to another minor).[3] This consideration could arguably weigh against imposing civil liability because recognizing a "purely statutory duty" can have "an extreme effect upon the common law of negligence" when it allows a cause of action where the common law would not. *See Perry*, 973 S.W.2d at 306. However, such "an extreme effect" would not occur in this case because the concern over the criminalization of inaction rather than action that the *Perry* Court warned about is not present here. *See id.* Instead, the provisions criminalize affirmative action by individuals and, by extension, a very specific class of businesses.

---

[3] Cerda concedes in her brief that "had there been physical injury associated with [Noel's] entry into Club Cheetah, Club Cheetah would have breached a general duty of ordinary care and would be civilly liable for those injuries."

*See id.* (citing Ezra Ripley Thayer, *Public Wrong and Private Action*, 27 HARV. L. REV. 317, 327–28 (1914)).[4]

Second, we consider whether the statutes and ordinance put the public on notice by clearly defining the required conduct. Club Cheetah argues that the question of notice in this case poses more questions than answers and reveals "a truly dysfunctional standard for tort liability." We disagree. Section 43.25 clearly states that a person commits the offense of sexual performance of a child if "knowing the character and content thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance." *See* TEX. PENAL CODE ANN. § 43.25(b). In other words, the public is put on notice by section 43.25 to not employ, authorize, or induce a child younger than 18 years of age to engage in sexual conduct[5]

---

[4] Additionally, in support of this contention, Thayer notes that:

As society develops, new dangers to the public welfare are constantly perceived, and new prohibitions are enacted by the legislature. They may be regulations of highway traffic,— the position of vehicles on the highway, the speed at which they may run, the conduct of railways at crossings; or building laws passed to lessen fire risks; or restrictions on the use of dangerous articles, such as the carrying of firearms by children, or the sale of poisons unlabeled, or handling explosives without specified precautions. Whatever form the prohibition may take, and the varieties are infinite, a danger has been deemed by the legislature so great as to justify making its creation or continuance a public wrong. A new statutory "nuisance" has thus been created in every sense in which that word has legal significance; and the proposition that he who violates the statute or ordinance does so at his peril is only an application of the principle that an action lies in favor of one who has suffered a private injury from a public nuisance.

Ezra Ripley Thayer, *Public Wrong and Private Action*, 27 HARV. L. REV. 317, 327–28 (1914) (footnotes omitted).

[5] "Sexual conduct" is statutorily defined as:

sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola.

or a sexual performance.[6]   Likewise, section 43.251 prohibits a person from employing, authorizing, or inducing "a child to work" in "a sexually oriented commercial activity" or "any place of business permitting, requesting, or requiring a child to work nude or topless."[7]   Corpus Christi municipal ordinance 48-10 goes further than the penal code sections in putting the public on notice by creating a statutory presumption on sexually-oriented businesses.   *See* CORPUS CHRISTI, TEX., GEN. ORDINANCES ch. 48, art. II, § 48-10.   Ordinance 48-10 states that "an owner, manager, or an employee" of a sexually oriented business "[knows] a person was under the age of eighteen" unless such an employee asked for and was furnished a proper identification.   Further, the ordinance states that it is a defense to any charge under the ordinance that the identification provided "upon reasonable examination, appeared to be valid on its face reflecting that such person is more than seventeen years old."

---

TEX. PENAL CODE ANN. § 43.25(a)(2).

[6] "Sexual performance" means any performance or part thereof that includes sexual conduct by a child younger than 18 years of age.   *Id.* § 43.25(a)(1).

[7] "Nude" means a child who is:

(A)  entirely unclothed; or

(B) clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the child is female, or any portion of the genitals or buttocks.

*Id.* § 43.251(a)(4).   "Topless" means a female child clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of her breasts below the top of the areola.   *Id.* § 43.251(a)(6).

In examining whether the statute would impose liability without fault, the *Perry* Court relied on *El Chico v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987), *superseded by statute as stated in*, *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 684–85 (Tex. 2007), which found a liquor licensee negligent as a matter of law when he *knowingly* sells an alcoholic beverage to an intoxicated person. *See Perry*, 973 S.W.2d at 308. With regard to the pertinent penal code provisions, Club Cheetah argues that such statutes "on their face impose liability without an element of fault." Again, we disagree.

Section 43.25(b) legislatively imposes a standard of conduct which we adopt to define as the conduct of a reasonably prudent person. *See Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985) (citing *Moughon*, 576 S.W.2d at 604); *see also Mo. Pac. R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977) ("Where the Legislature has declared that a particular act shall not be done, it fixes a standard of reasonable care, and an unexcused violation of the statute constitutes negligence or contributory negligence as a matter of law."). Similarly, section 43.251 legislatively imposes a standard of conduct upon businesses which we adopt to define the conduct of a reasonably prudent business engaging in "sexually oriented commercial activity" or a business that permits, requests, or requires one to work nude or topless. *See Nixon*, 690 S.W.2d at 549. Furthermore, Ordinance 48-10 explicitly discusses fault by stating that an owner, manager, or employee of a sexually oriented business violates the ordinance by "*knowingly*, *recklessly*, or *with criminal negligence*" allowing a person, who is under the age of eighteen to remain on the premises. CORPUS CHRISTI, TEX., GEN.

13

ORDINANCES ch. 48, art. II, § 48-10 (1996) (emphasis added); *see also id.* ch. 48, art. II, § 48-2 (defining "sexually oriented business"). Additionally, Ordinance 48-10 imposes a "reasonable examination" standard on a sexually-oriented business that chooses to utilize the defense that the child presented a purportedly valid identification. Accordingly, these characteristics weigh in favor of imposing civil liability.[8]

Our next consideration is whether negligence per se would impose ruinous liability disproportionate to the seriousness of the defendant's conduct, particularly if the liability would fall on a broad and wide range of collateral wrongdoers. By enacting sections 43.25 and 43.251, the Texas Legislature has chosen to specifically criminalize the exploitation of children, by individuals and businesses that employ, authorize, or induce them to work in sexual performances, sexually-oriented businesses, or any place of business permitting, requesting, or requiring an individual to work nude or topless. Under section 43.25, the offense is a third-degree felony or a second-degree felony if the child is under fourteen years old. *See* TEX. PENAL CODE ANN. § 43.25(c). Third-degree felonies carry the fourth most serious punishment of Texas crimes with a punishment range of two to ten years' imprisonment and a fine of up to $10,000. *See id.* § 12.34 (West 2011). A violation of section 43.251, at the time that the crime in this case was allegedly committed, was a Class A misdemeanor. Class A misdemeanors are the most

---

[8] Club Cheetah requests this Court to take judicial notice of the 2011 Texas Human Trafficking Prevention Task Force Report. While we take judicial notice of the report, we find Club Cheetah's utilization of its contents as a basis for its arguments at this stage of the proceedings premature. Club Cheetah references the Task Force's report to argue that "if the biggest problem for state authorities is identifying victims like [Noel], then it is reasonable to conclude that [Martinez] and [Club Cheetah] will have difficulty making the same determination." These arguments deal more with questions of fact, not law, and do not aid in our de novo review of whether Cerda stated a recognized cause of action.

serious misdemeanors and are punishable by up to one-year imprisonment and a fine of up to $4,000. *But see id.* § 43.251(c) (amended in 2011 to make the offense a second-degree felony, or a first-degree felony if the child is under fourteen years old). A violation of ordinance 48-10 constitutes a Class C misdemeanor. *See* CORPUS CHRISTI, TEX., GEN. ORDINANCES ch. 48, art. II, § 48-3(c) (1996). Class C misdemeanors are punishable by fines not to exceed $500. *See* TEX. PENAL CODE ANN. § 12.23 (West 2011). Additionally, ordinance 48-3 gives the City of Corpus Christi the authority to "bring a civil action for the enforcement" of its ordinances regulating sexually-oriented businesses. *See id.* § 48-3(g).

We recognize Club Cheetah's meritorious argument that such civil liability would be "potentially ruinous" to Club Cheetah when compared to the criminal punishments of the relevant statutes. However, we disagree with such an assessment of the potential punishments involved. The Legislature intended for violations of both penal sections involved in this case to carry the possibility of imprisonment in addition to potential fines. Potential jail time deals with important liberty interests which could far outweigh any potential liability that could be imposed under the civil justice system. Additionally, while a violation of ordinance 48-10 carries a minimal criminal punishment of only a fine of up to $500; ordinance 48-3 also gives the City of Corpus Christi authority to bring civil actions.

Further, even though these provisions have no "ruinous liability disproportionate to the seriousness of the defendant's conduct," this liability would not particularly fall on a "broad and wide range" of collateral wrongdoers, as addressed by the Texas Supreme Court in *Carter v. William Sommerville and Son, Inc. See* 584 S.W.2d 274, 278–79 (Tex.

15

1979); *see also Perry*, 973 S.W.2d at 308.   Here, exposure of liability is directed toward a limited segment of specific individuals[9] and entities, which allow, employ, or induce children to engage, view, or be within certain proximity of businesses or activities that are sexual in nature.   *See* TEX. PENAL CODE ANN. §§ 43.25(c), 43.251; CORPUS CHRISTI, TEX., GEN. ORDINANCES ch. 48, art. II, § 48-10.   Club Cheetah argues, however, that use of the word "induce" in the penal code statutes would broaden the scope of collateral offenders to include patrons of Club Cheetah, who "drive the very existence of the club."   We, again, disagree.   "Induce" is not defined by the penal code, so we adopt the word's meaning in common usage.   *See* TEX. GOV'T CODE ANN. § 311.011 (West 2013).   Thus, "induce" means to "move by persuasion or influence" or "to bring about by influence." *Dornbusch v. State*, 156 S.W.3d 859, 866 (Tex. App.—Corpus Christi 2005, pet ref'd) (internal citations omitted).   Based on this definition, patrons, who merely act as such, could not be held liable without more evidence to show that they moved Noel by persuasion or influence to dance at Club Cheetah.   *See generally id.*   No such allegation is made in Cerda's pleadings.   Therefore, the limited scope of potential offenders, also weighs in favor of imposing civil liability.

Next, we consider whether Noel's injuries are a direct or indirect result of the violation of the statute.   As a starting point, Club Cheetah correctly points out that other defendants known and unknown, who are not parties to this appeal, have culpability in some of Noel's alleged injuries.   We disagree, however, that Noel's alleged injuries were

---

[9] In addition to punishing direct actors of the crime, penal code section 43.25 also punishes parents and legal guardians of children who "consent[] to the participation by the child in a sexual performance." *See* TEX. PENAL CODE ANN. § 43.25(b).

16

not a direct result of Club Cheetah's actions. After reading Cerda's pleadings as true and viewing them in a light most favorable to her, direct causation can be imputed to Club Cheetah under the facts of this case because Cerda alleges that because Club Cheetah allowed her to dance topless for the "entertainment and sexual gratification" of Club Cheetah's patrons, she suffered damages. Cerda's pleadings specifically name Club Cheetah as a first-party tortfeasor for actions unrelated to any other torts which may lie with any other third-party defendants. Therefore, this factor also weighs in favor of imposing civil liability.

Finally, we also consider the prevailing public policies of this state regarding children. *See Perry*, 973 S.W.2d at 306 (noting that the preceding factors are not necessarily exclusive). Texas has a "strong, long-standing policy to protect the interest of children," *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991), and a number of statutory schemes promote this interest. *See, e.g.*, Texas Family Code Chapter 161 (Involuntary Termination of Parent-Child Relationship); Texas Family Code Chapter 154 (Child Support); Texas Labor Code Chapter 51 (Restrictions on Employment of Children). In addition to these statutes, the Legislature intended to further its public policy of protecting the safety, welfare, and best interests of children by enacting statutes like sections 43.25 and 43.251 and Ordinance 48-10. Thus, these public policy considerations also support imposing civil liability.

In summary, we have considered various factors including: (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty; (2) whether the statute

17

puts the public on notice by clearly defining the required conduct; (3) whether the statute would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute; and (6) the prevailing public policies of this state regarding the protection of children. Because a decision to impose negligence per se under penal code sections 43.25 and 43.251, as well as City of Corpus Christi Ordinance 48-10, could be limited to cases alleging serious misconduct like the present case, would impose an easily-defined standard of liability on a limited class of individuals and businesses whose relationship to the allegations of damages was direct, and would further this state's long-standing policy of protecting the interest of children, we hold that it would be appropriate to adopt penal code sections 43.25 and 43.251, as well as Ordinance 48-10 as establishing duties and standards of conduct in tort. Such imposition would also be "fair, workable, and wise." *See Perry*, 973 S.W.2d at 306. Accordingly, we conclude that Cerda may plead a claim for negligence per se pursuant to these three legislative enactments. As a result, the trial court's dismissal of Cerda's negligence per se claims was erroneous.

### C. Gross Negligence

Lastly, Cerda argues that her cause of action for grossly negligent infliction of emotional distress is viable in post-*Boyles* Texas jurisprudence. Club Cheetah takes the opposite position, relying on *Boyles* and other cases to support its argument. We will examine each case below.

18

As stated earlier in this opinion, *Boyles* holds that there is no general duty not to negligently inflict emotional distress. *See* 855 S.W.2d at 597. The *Boyles* holding does not, however, address whether Texas recognizes a cause of action for grossly negligent infliction of emotional distress. *See id.* at 600–01. Cerda interprets this holding, however, as an implicit recognition of the cause of action, while Club Cheetah, relying on language in the opinion's dissent, argues that the court outright rejected such a theory. We find neither argument persuasive. We read *Boyles* as a side-step of the issue which holds that even if a cause of action were recognized in Texas, Kerr, the plaintiff, could not recover on it because she did not properly plead or preserve it as a theory of recovery. In other words, the Texas Supreme Court neither rejected nor recognized such a theory of recovery in its ruling because it was not pleaded and not properly before the court. However, unlike Kerr, Cerda properly pleaded grossly negligent infliction of emotional distress under the auspices that such a cause of action "already exist[s]" under Texas law. However, without further guidance from the Texas Supreme Court, we cannot make such a determination as to whether grossly negligent infliction of emotional distress is recognized in Texas.[10]

Club Cheetah further asserts, however, that since *Boyles*, the Texas Supreme Court has been "faced with multiple opportunities to recognize a cause of action for grossly negligent inflicted mental anguish or emotional distress and has rejected such

---

[10] We further note that Cerda expressly states that she does not ask this Court to create or recognize a new cause of action for grossly negligent infliction of emotional distress. Absent such an invitation, we decline to do so *sua sponte*. *See* TEX. R. APP. P. 47.1. We further believe that such a question of clarification would be better suited for our state's highest court or the Legislature to answer.

theory." *See Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998); *Temple-Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88 (Tex. 1999); *Perry*, 973 S.W.2d at 301. We disagree.

In *Standard Fruit and Vegetable*, the plaintiff asserted various claims at the trial court, including grossly negligent infliction of emotional distress, after witnessing a fatal accident that occurred in his proximity. The plaintiff alleged only mental anguish damages. The trial court granted summary judgment on all of plaintiff's claims, including the claim for egregious or grossly negligent infliction of emotional distress as an unrecognized cause of action under Texas law. The plaintiff appealed only two claims: (1) intentional infliction of emotional distress; and (2) negligent infliction of emotional distress based upon the breach of the defendant driver's duty allegedly owed to highway users under state and federal traffic laws. *See Standard Fruit*, 985 S.W.2d at 64. In its ruling, the Texas Supreme Court held only that the plaintiff could not maintain a claim for intentional infliction of emotional distress because the risk that emotional distress would result was incidental to the commission of some other tort. As such, the plaintiff could not recover under that particular theory; however, the issue of whether egregious or grossly negligent infliction of emotional distress was not properly before the court to address.

In *Temple-Inland*, the Texas Supreme Court held that fear of an increased risk of developing an asbestos-related disease when no disease is presently manifest, regardless of any individual plaintiff's circumstances, is not a recognized cause of action. 993 S.W.2d at 93. Like in *Standard Fruit and Vegetable*, the opinion does not

20

specifically address whether grossly negligent infliction of emotional distress is a recognized cause of action in Texas. *Perry* also does not address whether such a cause of action exists in Texas, as Club Cheetah argues. *See* 973 S.W.2d at 302 ("The sole issue before us is whether plaintiffs may maintain a cause of action for negligence per se based on the Family Code, which requires any person having cause to believe a child is being abused to report the abuse to state authorities and makes the knowing failure to do so a misdemeanor.").[11]

Therefore, because we hold that case law is unclear as to whether such a cause of action for grossly negligent infliction of emotional distress is recognized in Texas and Cerda has not asked us to recognize such a theory, we conclude that Cerda has not pled a recognized cause of action to survive dismissal on that particular cause of action. *See Mowbray*, 76 S.W.3d at 680.

### D. Summary

We overrule Cerda's issue on appeal regarding her causes of action under common-law negligence for breach of a duty to not corrupt a minor and grossly negligent infliction of emotional distress. We sustain Cerda's argument that the trial court erred by dismissing her negligence per se causes of action against Club Cheetah under Texas Penal Code sections 43.25 and 43.251, as well as under City of Corpus Christi Ordinance 48-10.

---

[11] We also decline to adopt the expanded interpretation of *Boyles* made by a federal district court in *Hagen v. BeautiControl Cosmetics, Inc.*, No. CIV.A.398-CV-1199, 1998 WL 355479, at *1 (N.D. Tex. 1998) (mem. op.) that grossly negligent infliction of emotional distress is not a recognized cause of action in Texas because such an opinion is not binding on this Court.

## IV. Conclusion

The trial court's judgment is affirmed, in part, and reversed and remanded, in part, for further proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
12th day of December, 2013.