Opinion by: Irene Rios, Justice
INTRODUCTION
This appeal arises from an attorney disciplinary proceeding in which a jury found Hugo Xavier de los Santos failed to hold funds belonging to a client separate from his own funds, a violation of *644 Texas Disciplinary Rule of Professional Conduct 1.14(a). We affirm the trial court's judgment entered on the jury verdict.
BACKGROUND
In January 2001, Kelle Martinez hired Mr. de los Santos to represent her and her daughter Tara in a personal injury lawsuit resulting from a motor vehicle accident. During this representation, Mr. de los Santos received monies for Kelle Martinez from insurance claims for personal injury protection, which he placed in a client escrow account ("the escrow account"). Mr. de los Santos paid the Martinezes' medical expenses from the escrow account. The personal injury lawsuit eventually settled, resulting in a payment of $85,000 to Kelle and $6,000 to Tara, all of which was placed in the escrow account on October 27, 2004.
Between 2001 and 2011, Mr. de los Santos represented Ms. Martinez in other cases related to injuries sustained in the motor vehicle accident, as well as unrelated cases filed by Ms. Martinez and/or her husband, Pete Martinez. The same escrow account was used in all of the cases in which Mr. de los Santos represented any of the Martinezes.
In a letter dated February 25, 2011, Ms. Martinez advised Mr. de los Santos she was dissatisfied with the time taken to resolve the outstanding medical bills and "with the time taken to settle [her] motor vehicle accident case." Ms. Martinez stated she intended to file a grievance with the State Bar of Texas. In response, Mr. de los Santos met with Kelle and Pete Martinez on March 18, 2011, and provided them a report which detailed the funds received and the expenses and attorney fees paid with regard to all of the cases in which he represented them. According to this report, Ms. Martinez was due $10,298.92 for the personal injury lawsuit. Mr. de los Santos gave Ms. Martinez and Pete a check in this amount during the meeting.
Some time later, Ms. Martinez filed a complaint with the Commission for Lawyer Discipline ("the Commission"). Following an investigation, the Commission filed suit against Mr. de los Santos alleging he violated Texas Disciplinary Rules of Professional Conduct 1.14(a), 1.14(b), and 8.04(a)(3).
The case proceeded to trial before a jury, which found in favor of Mr. de los Santos on all questions in the jury charge but one. Question Two of the charge asked the jury: "Did Hugo De Los Santos fail to hold funds belonging in whole or in part to clients or third persons, that were in his possession in connection with a representation, separate from his own funds?" The jury responded, "Yes". The trial court determined the jury's affirmative finding to Question Two constituted a violation of Texas Disciplinary Rule of Professional Conduct 1.14(a) (Rule 1.14(a) ).[2] The trial court assessed punishment of suspension from the practice of law in the State of Texas for 18 months, with 12 months of the suspension probated. Mr. de los Santos perfected this appeal.
ANALYSIS
Issues One and Two: Legal and Factual Sufficiency of the Evidence to Support the Jury Finding on Question Two
In his first and second appellate issues, Mr. de los Santos argues the jury's answer to Question Two should be set aside because *645 the evidence is legally and factually insufficient to support it. With regard to his legal sufficiency challenge, Mr. de los Santos contends the evidence conclusively proves he held funds belonging to Ms. Martinez or third persons separate from his own funds. In addition, Mr. de los Santos asserts the Commission presented no evidence that he ever failed to deposit any funds belonging to the Martinezes into the escrow account, that he paid any of his firm's bills or expenses from Ms. Martinez's escrow account, or that he failed to hold funds belonging to the Martinezes separate from his own funds.
Standard of Review
Legal Sufficiency Challenge
To successfully challenge the legal sufficiency of evidence to support an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate the record contains no evidence to support the adverse finding. Bennett v. Comm'n for Lawyer Discipline , 489 S.W.3d 58, 65-66 (Tex. App.-Houston [14th Dist.] 2016, no pet.). An appellate court may sustain such a legal-sufficiency (or no evidence) challenge only if the record reveals one of the following: (1) the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. City of Keller v. Wilson , 168 S.W.3d 802, 811 (Tex. 2005) ; Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC , 403 S.W.3d 547, 551 (Tex. App.-Houston [14th Dist.] 2013, no pet.). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharm., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. Kroger Tex., Ltd. P'ship v. Suberu , 216 S.W.3d 788, 793 (Tex. 2006) ; Kellmann v. Workstation Integrations, Inc. , 332 S.W.3d 679, 684 (Tex. App.-Houston [14th Dist.] 2010, no pet.).
In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. City of Keller , 168 S.W.3d at 819-22 ; Leas v. Comm'n for Lawyer Discipline , 13-10-00441-CV, 2012 WL 3223688, at *4 (Tex. App.-Corpus Christi Aug. 9, 2012, pet. dism'd w.o.j.) (mem. op.). This court must credit favorable evidence and disregard contrary evidence if a reasonable trier of fact would do so. City of Keller , 168 S.W.3d at 821-22 ; Leas , 2012 WL 3223688, at *4.
Factual Sufficiency Challenge
To successfully challenge the factual sufficiency of evidence to support an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding. McMillin v. State Farm Lloyds , 180 S.W.3d 183, 201 (Tex. App.-Austin 2005, pet. denied). When reviewing a challenge to the factual sufficiency of the evidence, an appellate court must examine and weigh all of the evidence in the record, including any evidence contrary to the verdict. Pool v. Ford Motor Co. , 715 S.W.2d 629, 635 (Tex. 1986) ; Leas , 2012 WL 3223688, at *4. The appellate court may set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust.
*646 Pool , 715 S.W.2d at 635 ; Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986) ; Leas , 2012 WL 3223688, at *4.
Evidence Presented
The testimony and evidence presented that pertains to the jury's finding on Question Two is as follows:
To support its allegations, the Commission introduced into evidence Mr. de los Santos's internal bookkeeping record of the client escrow account and the balance owed him by the clients ("the ledger sheet").[3] The ledger sheet reflected all transactions in all of the cases in which he represented any of the Martinezes. Mr. de los Santos testified regarding the ledger entries reflecting all funds deposited into the escrow account and payments made from it. The ledger entries also showed a running "Escrow Balance," which reflected changes when Mr. de los Santos received reimbursement for expenses paid or received payments for attorneys fees, and it also showed a running balance of an amount the Martinezes owed Mr. de los Santos for unreimbursed expenses and unpaid attorney fees accumulated in all of the cases. Mr. de los Santos testified he deposited into the escrow account all settlement funds and other funds recovered related to his representation of the Martinezes in all cases and withdrew all of his corresponding attorney fees and expenses. He also paid through the escrow account medical expenses related to the 2001 motor vehicle accident.
All parties testified regarding Mr. de los Santos's representation of Pete and Kelle Martinez in a suit against the estate of Pete's nephew. The Retainer Agreement for this engagement provided for a retainer fee of $15,000 to be paid by: (1) a cash payment of $5,000, which the Martinezes submitted; and (2) "the labor and materials and full cost and price set forth in" the Addendum to Retainer Agreement (Remodeling and Construction Agreement) (hereinafter "Construction Agreement"). The Construction Agreement required Pete to install electronic gates and repair a fence on the property of Mr. de los Santos's law firm. The work was to commence on February 1, 2007 and was to be completed by May 31, 2007. Pursuant to the terms of the Retainer Agreement, upon completion of the work, Mr. de los Santos's wife, Michele, was to pay the Martinezes $10,000. The Martinezes would then pay $10,000 to Mr. de los Santos for the remainder of the retainer fee. Ultimately, Pete did not complete the work.
Mr. de los Santos testified regarding his accounting of the $15,000 retainer fee for his representation in the estate matter. Mr. de los Santos testified he posted in the ledger sheet the $10,000 portion of the retainer fee associated with Pete's construction of the gate on January 5, 2007, the date he entered the Retainer Agreement with the Martinezes, even though construction was to commence on February 1, 2007, and was not to be completed for several months. In this posting in the ledger sheet titled, "Retainer Agreement & Gate & Fence-802C," Mr. de los Santos reduced the "Escrow Balance" by $10,000 and, accordingly, the amount owed by the Martinezes and the running balance of monies owed to Mr. de los Santos were also reduced by $10,000.
*647 When asked whether he withdrew $10,000 from the escrow account on January 5, 2007, Mr. de los Santos testified that he posted the $10,000 retainer fee on that date, before Pete's deadline to perform under the Construction Agreement "to protect my interest. It was like a lien; so if they got it and they did the work, they were going to get credit for the $10,000." He further testified, "I took the $10,000 as a lien. They didn't pay because they didn't do the work, so they needed to pay the money back so that we could put it back to have there in the funds for the doctors and for other fees."
On October 27, 2008, seventeen months after Pete failed to complete construction, Mr. de los Santos posted $10,000 in the ledger sheet under "Payment Amount" stating, "Martinezes Failed to Install Gate/Repair Fence by 5/31/07"; however, no ledger-sheet balances were changed on that date (the "Escrow Balance" reflected the $10,000 reduction in attorneys fees owed to Mr. de los Santos on January 5, 2007). To corroborate his testimony that the ledger sheet posting was "a lien" and not true receipt of the money, Mr. de los Santos submitted a demand letter he sent to the Martinezes on the same date, which stated,
[Y]ou did not repair the fence at my law offices, nor have you installed the electronic gates.... Thus, you presently owe me $10,000.00 for balance due for the retainer fee you agreed to pay.... Per our discussions, I have applied the $1,029.67 ... I have in my escrow account from [one of the other cases] recoveries towards your said $10,000.00 balance, leaving a balance due me of $8,970.33. Please pay this latter sum at your earliest opportunity.
Ms. Martinez testified that Mr. de los Santos did not explain to her that if Pete failed to build the gate, Mr. de los Santos would withdraw the $10,000 remainder of the retainer fee from the escrow account. It is undisputed that the Retainer Agreement contains no language regarding payment for the balance of the retainer fee should Pete fail to complete construction.
Mr. de los Santos testified he met with the Martinezes on March 18, 2011, and issued a check to them for $10,298.92. On that date, the ledger sheet reflected an "Escrow Balance" of $7,396.45, leaving a negative balance of $2,902.47 when Mr. de los Santos issued the check to the Martinezes. After he met with the Martinezes, Mr. de los Santos testified he deposited $13,146 into the escrow account, which was the total of the bills from Dr. Nelson, a chiropractor who treated Kelle and Tara. Mr. de los Santos testified he deposited this amount into the escrow account out of caution because he paid these bills from the escrow account in November 2004; however, the Martinezes disputed the veracity of this payment during the March meeting. In addition, Mr. de los Santos deposited $14,518 into the escrow account, which he testified was to cover medical bills he anticipated the Martinezes still owed to Sendero Imaging & Treatment Center and which the Martinezes also challenged during the March meeting. The money for these deposits came from Mr. de los Santos's own business bank account.
Application
When viewed in the light most favorable to the jury verdict, Mr. de los Santos's testimony that he posted the $10,000 retainer fee on January 5, 2007, before Pete completed construction, combined with the ledger sheet postings on that date are probative of the jury's finding. These entries were consistent with Mr. de los Santos receiving payment for attorneys fees. The ledger sheet entries and balances support the jury's conclusion Mr. de los Santos *648 received monies from the escrow account to pay himself the $10,000 balance for the retainer; otherwise, there would be no need to replenish the account to pay "doctors and other fees."
Therefore, upon review of all of the evidence presented, we conclude the evidence is legally and factually sufficient to support the jury's finding that Mr. de los Santos failed to hold funds belonging to the Martinezes or doctors separate from his own funds. For these reasons, we overrule Mr. de los Santos's first and second issues.
Issue Three: Inconsistency of Jury Answers
In his third appellate issue, Mr. de los Santos argues the jury's finding in Question Two must be set aside because it is fatally inconsistent with the jury's finding in Question 1B.
"To preserve error that the jury's findings are inconsistent, the complaining party must raise an objection in the trial court before the jury is discharged." Izen v. Comm'n for Lawyer Discipline , 322 S.W.3d 308, 324 (Tex. App.-Houston [1st Dist.] 2010, pet. denied).
The record does not reflect Mr. de los Santos objected to any inconsistency in the jury's verdict before the jury was discharged. Therefore, Mr. de los Santos waived appellate review of whether any inconsistency in the jury's verdict required the jury's affirmative answer in Question Two be set aside. See ids="7321719" index="17" url="https://cite.case.law/sw3d/322/308/#p324">id.
We overrule Mr. de los Santos's third issue.
Issue Four: Whether the Jury Charge Conforms to the Pleadings
In his fourth appellate issue, Mr. de los Santos argues the trial court's judgment is void because the jury charge does not conform to the pleadings. Specifically, Mr. de los Santos contends the Commission did not plead that he violated Rule 1.14(a) by failing to keep funds belonging to the Martinezes separate from his own.
A complaint to a jury charge is waived unless it is presented to the trial court by specific objection. TEX. R. CIV. P. 272, 274 ; TEX. R. APP. P. 33.1(a)(1). Thus, to preserve a jury-charge complaint a party must make the trial court "aware of the complaint, timely and plainly, and obtain[ed] a ruling." Cruz v. Andrews Restoration, Inc. , 364 S.W.3d 817, 829 (Tex. 2012) (quoting State Dep't of Highways & Pub. Transp. v. Payne , 838 S.W.2d 235, 241 (Tex. 1992) ).
The record does not reflect that Mr. de los Santos objected to this alleged jury-charge error. For this reason, Mr. de los Santos waived this complaint on appeal.[4]
We overrule Mr. de los Santos's fourth issue on appeal.
Issue Five: Statute of Limitations
In his fifth appellate issue, Mr. de los Santos argues the Commission's claims are barred by the statute of limitations.
Limitations is an affirmative defense. TEX. R. CIV. P. 94. A party asserting an affirmative defense bears the burden to plead, prove, and secure findings on the defense. Woods v. William M. Mercer, Inc. , 769 S.W.2d 515, 517 (Tex. 1988). The failure to request a jury instruction on an affirmative defense results in waiver unless the issue was conclusively established. Superior Broad. Products v. Doud Media Group, L.L.C. , 392 S.W.3d 198, 205 (Tex. App.-Eastland 2012, no pet.) ;
*649 XCO Prod. Co. v. Jamison , 194 S.W.3d 622, 632 (Tex. App.-Houston [14th Dist.] 2006, pet. denied).
The record reflects Mr. de los Santos did not request a jury instruction or jury question on the issue of the statute-of-limitations affirmative defense. When the trial court asked whether the parties had any objections to the proposed charge, Mr. de los Santos neither objected to any omission of an instruction and/or question on this affirmative defense nor did he request a jury question. Also, although Mr. de los Santos presented evidence through the ledger sheet and his testimony that the latest date he paid his attorney fees out of the escrow account was January 5, 2007, the evidence also established he failed to notify the Martinezes he had done this. He, therefore, failed to conclusively establish the four-year statute of limitations ran on the Martinezes claim that he violated rule 1.14(a) by commingling funds. Consequently, Mr. de los Santos waived appellate review of his statute-of-limitations affirmative defense.
We overrule Mr. de los Santos's fifth issue.
Issue Six: Hearings Outside Bexar County
In his sixth appellate issue, Mr. de los Santos argues the trial court abused its discretion by conducting hearings and rendering and signing the final judgment outside of Bexar County, the venue in which the case was filed. Specifically, Mr. de los Santos contends the trial court denied him due process by holding pre-trial and post-trial hearings telephonically from her court in Dallas County and by rendering and signing the final judgment in Dallas County, rather than while within the confines of Bexar County.
Mr. de los Santos's argument is based upon the common-place geographical constraints imposed upon ordinary proceedings by article V, section 7 of the Texas Constitution and Section 74.094(e) of the Texas Government Code. However, "the geographical constraints imposed by article V, section 7 of the Texas Constitution and section 74.094(e) of the Texas Government Code do not apply in a disciplinary proceeding." Acevedo v. Comm'n For Lawyer Discipline , 131 S.W.3d 99, 104 (Tex. App.-San Antonio 2004, pet. denied). A disciplinary proceeding is not an ordinary proceeding because it is filed in the Supreme Court of Texas, is not filed by either the State or a private litigant but by the Commission for Lawyer Discipline, and is not filed to redress a private wrong or a violation of the penal code but to hold a lawyer accountable for his professional misconduct. Acevedo , 131 S.W.3d at 104. In addition, in disciplinary proceedings, the Texas Supreme Court must appoint an active district judge who does not reside in the Administrative Judicial Region in which the Respondent resides. TEX. R. DISCIPLINARY. P. 3.02 ; Favaloro v. Comm'n for Lawyer Discipline , 13 S.W.3d 831, 836 (Tex. App.-Dallas 2000, no pet.).
Here, the trial court held several pre-trial hearings telephonically, with the judge sitting in Dallas County; however, the jury trial on the merits occurred in open court in Bexar County, and the jury verdict was announced in open court in Bexar County. The subsequent proceeding to determine sanctions based upon the jury verdict was held in Bexar County and the trial court's assessment of punishment was announced upon completion of the hearing. The hearing on the motion for new trial was held in open court in Bexar County and denial of the motion was announced in open court upon completion of the hearing. Therefore, the trial court provided Mr. de los Santos with due process required under the Texas Constitution and within the Texas disciplinary rules. See Acevedo , 131 S.W.3d at 104.
*650 Further, Mr. de los Santos's argument that the trial court's judgment was void because it was rendered and signed in Dallas County also fails. The Texas Rules of Disciplinary Procedure do not require that a trial court sign the final judgment in the county seat. See ids="9274946" index="27" url="https://cite.case.law/sw3d/131/99/#p104">id. The actual signing of the final judgment in Dallas County was simply ministerial, and therefore did not deprive Mr. de los Santos of due process. See Acevedo , 131 S.W.3d at 104 ; Araujo v. Araujo , 493 S.W.3d 232, 235-37 (Tex. App.-San Antonio 2016, pet. denied) ; De Los Santos v. Comm'n For Lawyer Discipline , 07-06-0290-CV, 2007 WL 1287882, at *2 (Tex. App.-Amarillo May 2, 2007, no pet.).
Mr. de los Santos's sixth issue is overruled.
Issue Seven: Denial of Special Exceptions
In his seventh issue, Mr. de los Santos contends the trial court abused its discretion by overruling his special exceptions to the Commission's pleadings. Mr. de los Santos complains the Commission alleged generally that Mr. de los Santos violated Rule 1.14(a), but failed to assert facts to provide fair notice of the basis of its action. Particularly, the Commission failed to allege facts to support the ground of violation found by the jury, i.e., that he failed to keep funds belonging to the Martinezes separate from his own.
Standard of Review
A trial court has broad discretion in ruling on special exceptions. Baylor Univ. v. Sonnichsen , 221 S.W.3d 632, 635 (Tex. 2007). On review, the trial court's ruling will be reversed only upon a showing of abuse of discretion. Fuentes v. McFadden , 825 S.W.2d 772, 778 (Tex. App.-El Paso 1992, no writ). Abuse of discretion occurs if the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary and unreasonable manner. Downer v. Aquamarine Operators, Inc. , 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) ; Fuentes , 825 S.W.2d at 778.
Application
The purpose of special exceptions is to compel clarification of pleadings that are not sufficiently specific or are vague and indefinite. Gatten v. McCarley , 391 S.W.3d 669, 673 (Tex. App.-Dallas 2013, no pet.) ; Townsend v. Mem'l Med. Ctr. , 529 S.W.2d 264, 267 (Tex. Civ. App.-Corpus Christi 1975, writ ref'd n.r.e.). A pleading must contain "... a short statement of a cause of action sufficient to give fair notice of the claim involved...." TEX. R. CIV. P. 47. The test for determining whether a pleading gives adequate notice is whether "an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant," Rodriguez v. Yenawine , 556 S.W.2d 410, 414 (Tex. Civ. App.-Austin 1977, no writ) ; Davis v. Quality Pest Control , 641 S.W.2d 324, 328 (Tex. App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.).
On appeal, Mr. de los Santos re-argues the merits of his special exceptions, but fails to present argument to demonstrate how the trial court abused its discretion in overruling these special exceptions. That is, Mr. de los Santos fails to argue or show how the trial court acted without reference to any guiding rules and principles, or in an arbitrary and unreasonable manner.
Our review of the pleadings, special exceptions and trial record fails to show any abuse of discretion on the part of the trial court in overruling Mr. de los Santos's special exceptions to the pleadings. The *651 pleadings provide a short statement of general facts from which the cause arises and recites the rules alleged to have been violated. The pleadings provide basis to ascertain the nature and the basic issues of the controversy and the testimony probably relevant. See Rodriguez , 556 S.W.2d at 414. At trial, Mr. de los Santos was familiar with the factual support and specific basis of the Commission's alleged violation of Rule 1.14(a). Mr. de los Santos presented his own evidence and testimony to defend any allegation that he commingled funds belonging to the Martinezes with his own funds. Mr. de los Santos presented testimony and an adequate defense to the allegation that he prematurely received the $10,000 retainer from the escrow account.
Therefore, the trial court did not abuse its discretion by overruling Mr. de los Santos's special exceptions. We overrule Mr. de los Santos's seventh issue on appeal.
CONCLUSION
For the reasons stated, we affirm the trial court's judgment.

Texas Disciplinary Rule of Professional Conduct 1.14(a) provides, in pertinent part, "[a] lawyer shall hold funds and other property belonging ... to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property." Tex. Disciplinary Prof'l Conduct R. 1.14(a), reprinted in Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

The ledger sheet reflects entries of "Payment Amount," "Deposit Amount," "Escrow Balance," and the "Amount" and "Balance" "Owed by CL [client] to HXDLS [Mr. de los Santos]". Neither party admitted into evidence the bank statements of the escrow account or of Mr. de los Santos's business or personal accounts. Therefore, all testimony and evidence was based upon the ledger sheet entries as if they reflect the escrow account balance.

Furthermore, the Commission alleged in its petition that the facts "constituted a violation of Texas Disciplinary Rule of Professional Conduct: Rule 1.14(a)" and it then recited the rule. Therefore, the jury charge conformed to the pleadings.