

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00714-CV

**IN THE ESTATE OF** Joanne Cooksey **FRIEND**

From the County Court, Uvalde County, Texas
Trial Court No. 6904-16
Honorable Polly Jackson Spencer, Judge Presiding[1]

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: February 19, 2020

AFFIRMED

Suzanne Friend Johnston appeals a judgment that sets aside three gift deeds and a will her mother executed based on jury findings of undue influence. We hold sufficient evidence supports the jury's findings, and Suzanne's motion for new trial requires improperly delving into the jury's deliberations. We therefore affirm the trial court's judgment.

## BACKGROUND

Joanne Cooksey Friend was married to Don Friend for over fifty years. Joanne owned the Cooksey Ranch, which consisted of approximately 1,000 acres in Uvalde County. For some time, the Friend family—including Joanne, Don, their daughters Sarah and Suzanne, and Sarah's children—was close. Joanne and Don frequently discussed with the family how, after they died,

---

[1] Sitting by assignment.

the ranch would be divided equally between Sarah and Suzanne. Based on this understanding, Sarah (together with Joanne, Don, and her husband at the time) purchased a parcel of land that would provide access to the acreage Sarah was to receive.

Suzanne and her husband Joel returned from living abroad for several years, but Sarah and Suzanne's relationship was not as close as before. Their relationship further deteriorated after their father Don died in an accident on the ranch in October 2010. After Don's death, Sarah's relationship with her mother, Joanne, also deteriorated. In December 2010, Joanne signed a gift deed conveying 478 acres of the ranch to Suzanne.[2]

In 2011, Joanne accused Sarah of stealing from her safe at the ranch, and "running all over town, spreading stories about her being crazy and incompetent." In January 2012, Joanne accused Sarah's sons of planning to put her into a nursing home. In a handwritten note, Joanne stated she had concerns about Sarah and her sons and intended to execute a new will to protect the ranch.

On January 17, 2012, Joanne signed a gift deed conveying another 478 acres of the ranch to Suzanne. On February 16, 2012, Joanne signed a will leaving her entire estate to Suzanne. On November 27, 2012, Joanne signed two more gift deeds conveying approximately 20 acres to Suzanne. In the November 27, 2012 gift deeds, Joanne also conveyed her house, a guesthouse, and a barn to Suzanne, but reserved a life estate in her residence. Included within these transfers was the acreage Sarah originally was to receive and for which Sarah had purchased adjacent property. Suzanne, exercising power of attorney on behalf of Joanne, also conveyed Joanne's car to her husband, Joel.

In 2016, Joanne died, and Suzanne applied to probate the will. In her will, Joanne recited she had two daughters, but made no provision for Sarah. Sarah argued the will was executed as a

---

[2] Although Sarah claimed this deed was signed as a result of undue influence, the jury found otherwise, and Sarah does not challenge this finding.

result of undue influence and Joanne lacked testamentary capacity. Sarah challenged the four gift deeds on the same grounds.

At the end of trial, the jury found Joanne executed the February 16, 2012 will, the January 17, 2012 gift deed, and the two November 27, 2012 gift deeds as a result of undue influence. The jury found the December 20, 2010 gift deed was not signed as a result of undue influence. The issue of Joanne's testamentary capacity was not submitted to the jury.

The trial court rendered judgment on the jury's findings, setting aside the will and three gift deeds. Suzanne filed a motion for new trial, arguing the jury's findings were not supported by legally and factually sufficient evidence. In the motion, Suzanne also argued a juror made inaccurate statements during deliberations. The motion was overruled by operation of law, and Suzanne timely appealed.

## INACCURATE JUROR STATEMENTS DURING DELIBERATIONS

Suzanne argues she was entitled to a new trial based on a juror "provid[ing] incorrect expert opinions" to other jurors during deliberations about Joanne's medical records. We review a denial of a motion for new trial for an abuse of discretion. *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 47–48 (Tex. App.—San Antonio 2006, no pet.). "A juror may testify about jury misconduct provided it does not require delving into deliberations." *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 370 (Tex. 2000). Suzanne's argument is based on one juror's affidavit about another juror's comments during deliberations. Suzanne's claim of juror misconduct requires delving into deliberations, and does not relate to outside influences on those deliberations. *See id.* We overrule this issue.

## UNDUE INFLUENCE

Suzanne argues the jury's findings of undue influence are not supported by legally and factually sufficient evidence. We will sustain a legal sufficiency challenge if: (1) there is a

complete absence of evidence at trial of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered at trial to prove a vital fact; (3) the evidence offered at trial to prove a vital fact is no more than a scintilla; or (4) the evidence at trial established conclusively the opposite of the vital fact. *Santos v. Comm'n for Lawyer Discipline*, 547 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005)). "In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it." *Id.* "In reviewing a question of factual sufficiency, we consider and weigh all of the evidence presented at trial in a neutral light, setting aside the verdict only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Tex. Outfitters Ltd., LLC v. Nicholson*, 534 S.W.3d 65, 73 (Tex. App.—San Antonio 2017), *aff'd*, 572 S.W.3d 647 (Tex. 2019).

## A. Applicable Law

"To prevail on an undue influence claim, the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence." *In re Estate of Johnson*, 340 S.W.3d 769, 776 (Tex. App.—San Antonio 2011, pet. denied) (citing *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963)). The same elements are required to prevail on an undue influence claim to set aside a deed. *Fillion v. Troy*, 656 S.W.2d 912, 915 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Not "every influence exerted by a person on the will of another is undue," but undue influence includes "deception used in an effort to overcome or subvert the will of the maker of the testament and induce the execution thereof contrary to his will." *Rothermel*, 369 S.W.2d at 922.

Undue influence may be proven by circumstantial evidence. *Id.* These circumstances must be directed "to the state of the testator's mind at the time of the execution of the testament." *Id.* at 923. Relevant circumstances include the existence of opportunities to deceive and exert influence; the circumstances surrounding the drafting and execution of the instrument; whether the testator has been habitually subject to the control of another; the susceptibility of the testator's mind or the testator's mental or physical incapacity to resist the type and extent of the influence exerted; the existence of a fraudulent motive; and whether the testament executed is unnatural in its terms of disposition of property. *Id.*

**C. Analysis**

We measure the sufficiency of the evidence against the jury charge as it was submitted. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005). For each instrument discussed above, the jury charge defined undue influence as requiring "1. an influence existed and was exerted, and 2. the influence undermined or overpowered the mind of the decedent at the time she signed the Deed [or Will], and 3. the decedent would not have signed the Deed [or Will] but for the influence." No objections were made to this definition.

*1. Existence & Exertion of an Influence*

Sarah testified that, according to Joanne, Suzanne claimed Sarah was the one who broke into and stole from Joanne's safe. Sarah testified this was a lie because she did not have the safe combination, but Suzanne did. Sarah also testified that, again according to Joanne, Suzanne told her Sarah was "running all over town, spreading stories about her being crazy and incompetent." Sarah testified this, too, was false. A family friend, Cheryl McMullen, testified about a conversation she had with Suzanne and Joanne. McMullen testified Suzanne said during the conversation that "Sarah lied or stole or cheated" and was a "bad mother." McMullen stated Suzanne's comments influenced Joanne. Suzanne was also living on the ranch with Joanne, and

Sarah testified Suzanne made efforts to isolate Joanne. This evidence would enable a reasonable factfinder to conclude an influence existed and that Suzanne exerted an influence on Joanne. *See In re Estate of Rodriguez*, No. 13-16-00091-CV, 2017 WL 1228905, at \*4 (Tex. App.—Corpus Christi Mar. 2, 2017, no pet.) (mem. op.).

2. *Undermining/Overpowering the Mind of the Decedent*

Sarah and her son, Chance, testified that before Don died, Joanne started exhibiting signs that her mental state was deteriorating. Sarah stated Joanne found Don's body on the ranch where he died in an accident involving an off-road vehicle, she sat with his body for hours, she went into a state of shock, and she never fully recovered. The trial court admitted Joanne's medical records and her death certificate. This evidence shows Joanne had a stroke, was diagnosed with and died from dementia or Alzheimer's disease, as well as heart failure. Sarah also testified that before Don died, Joanne went to a Dementia Clinic with Don, and a medical record notes Joanne "presented with dementia . . . . Recent functioning has been marked by rapid deterioration. She is unable to recall the date, and Ms. Friend demonstrates anxious . . . agitated, aggressive, and paranoid behavior."

Sarah also testified that after Don died, Suzanne made all of Joanne's decisions for her and isolated Joanne by interfering with Sarah's ability to interact with her. Sarah explained Joanne used to return her phone calls and that she always had access to the ranch and a key to Joanne's house, but Suzanne changed the locks to the house, installed a gate requiring a code Sarah did not have, and took control over Joanne's voicemail and phone messages, and Joanne no longer returned Sarah's calls. Sarah further testified Suzanne forced Joanne to leave her house and live in the guesthouse, while Suzanne and Joel lived in Joanne's house. The evidence also shows Joanne conveyed virtually all of her real property to Suzanne, and Suzanne, using power of attorney, gave Joanne's car to her husband Joel. Sarah additionally testified Joanne gave a typewritten letter to

her lawyer about changing her will, listing numerous reasons for disinheriting Sarah. Sarah testified Suzanne must have written the letter because Joanne never used a typewriter or computer. Additionally, Chance testified that, before Don died, Don had warned him about Suzanne trying take more than half of the estate after he and Joanne died. The evidence would enable a reasonable factfinder to conclude Suzanne's influence at least undermined, if not overpowered, Joanne's mind at the time she signed her will and the gift deeds in 2012. *See, e.g.*, *Adamson v. Burgle*, 186 S.W.2d 388, 394–95 (Tex. Civ. App.—San Antonio 1945, writ ref'd w.o.m.) (holding evidence that testatrix was suffering from dementia was relevant to undue influence finding).

### 3. No Execution "But For" the Influence

It was undisputed that before Don died, Don and Joanne planned to divide the ranch equally between Sarah and Suzanne. Sarah testified Joanne changed her mind because of lies Suzanne had told Joanne about stealing from the safe and telling others she was "crazy and incompetent." Suzanne also testified these incidents were reasons Joanne would have disinherited Sarah. The evidence would enable a reasonable factfinder to conclude that but for Suzanne's influence, Joanne would not have executed her will disinheriting Sarah and the gift deeds transferring virtually all of the ranch to Suzanne. *See, e.g.*, *Johnson*, 340 S.W.3d at 783–84.

### 4. Conclusion

We hold there is legally sufficient evidence to support the jury's findings of undue influence. Although Suzanne does not separately brief her factual sufficiency challenge, we note the evidence relevant to undue influence was heavily disputed. Both Sarah and Suzanne accused each other of lying, being greedy, attempting to take advantage of their mother, and other misconduct. The jury believed Sarah. Suzanne provided other reasons why Joanne would have disinherited Sarah, but "evidence of a reasonable explanation for an unnatural disposition does not prevent a jury from finding undue influence. Instead, where such evidence is proffered, the jury

must determine which explanation should be given more weight and which explanation is more credible." *See id.*

Suzanne contradicted Sarah's testimony primarily through her own testimony. However, during trial, Suzanne's credibility as a witness was undermined in significant ways, such as her repeated denials of Joanne's documented mental health issues, and her inability to explain a typewritten letter supposedly written by Joanne when Joanne had never used a typewriter or computer. We cannot say the jury's findings of undue influence were against the great weight and preponderance of the evidence so as to be manifestly unjust. We hold legally and factually sufficient evidence supports the jury's findings of undue influence.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice