

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00413-CV

Vicente **MEZA**,
Appellant

v.

Imelda Radke **GARZA**,
Appellee

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-22-21
Honorable Baldemar Garza, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:       Irene Rios, Justice
               Lori I. Valenzuela, Justice
               Velia J. Meza, Justice

Delivered and Filed: June 10, 2026

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

In four issues, appellant Vicente Meza challenges a final judgment rendered after a bench trial in favor of appellee Imelda Radke Garza. We reverse the portion of the trial court's judgment that awards attorney's fees to Garza, and we remand this matter for further proceedings on the fee award. We affirm the remainder of the judgment.

## BACKGROUND

The parties agree that in 2010, Meza orally agreed to sell approximately twelve acres of land in Duval and Jim Wells Counties to Garza's husband, Roel, for $55,000. There was no written contract. Garza contends that she participated in the negotiations that resulted in the oral agreement, but Meza disagrees. Both Garza and Meza testified that the Garzas paid the full $55,000 purchase price no later than 2012.

Roel died in 2016. At that time, Meza had not executed a deed memorializing the conveyance of the land to the Garzas. At some point in early 2022, Meza locked Garza out of the property. He also attempted to sell the property in 2022 or 2023.

On February 28, 2022, Garza sued Meza for breach of contract and promissory estoppel. She sought monetary damages, specific performance via an "order requiring [Meza] to deliver free and clear title to the property," and attorney's fees. Both Garza's petition and Meza's original answer acknowledged that Roel had died. Garza subsequently amended her petition to assert her claims in both her individual capacity and as administrator of Roel's estate. The trial court set the final pretrial hearing for November 20, 2024 and the bench trial for December 10, 2024.

On November 8, 2024, Meza—who was represented by an attorney—filed a pro se document entitled "Suggestion of Death of Roel Garza." The pro se document represented that Roel died in 2016 and asserted that "there is a jurisdictional defect for this matter to continue until the court acquires jurisdiction over the Deceased's heir." On November 13, 2024, Meza's trial attorney filed a motion to withdraw and a separate motion for continuance. During the final pretrial hearing, the trial court granted the motion to withdraw and denied the motion for continuance.

The day before trial, Meza filed a pro se motion for continuance. The next day, when the court called the case for trial, Meza announced "ready." He did not request a ruling on his pro se motion before he announced ready or before the parties began presenting evidence.

After hearing the evidence, the trial court signed a final judgment in Garza's favor. Meza timely filed this appeal.

## ANALYSIS

### *Attorney Withdrawal and Continuance*

In his first issue, Meza argues the trial court abused its discretion by allowing his trial attorney to withdraw and refusing to continue the trial date.

### *Standard of Review and Applicable Law*

"The right to counsel is a valuable right; its unwarranted denial is reversible error." *Wilborn v. Life Ambulance Servs., Inc.*, 163 S.W.3d 271, 274 (Tex. App.—El Paso 2005, pet. denied). "[W]hen a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). However, "[w]hen the ground for the continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence." *Id.*; *Wilborn*, 163 S.W.3d at 274; *see also* TEX. R. CIV. P. 253 ("Except as provided elsewhere in these rules, absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record.").

We review a trial court's rulings on both a motion to withdraw and a motion for continuance for abuse of discretion. *See Villegas*, 711 S.W.2d at 626. A trial court does not abuse

its discretion unless its ruling is arbitrary, unreasonable, or made without reference to guiding rules or principles. *See, e.g.*, *In re Matter of Marriage of Harrison*, 557 S.W.3d 99, 112 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

*Application*

Meza's trial attorney filed the motion to withdraw 27 days before trial, and the trial court granted that motion 20 days before trial. Our sister courts have affirmed orders granting motions to withdraw on similar timelines. *See Robinson v. Ochoa*, No. 13-16-00357-CV, 2018 WL 1633516, at *9 (Tex. App.—Corpus Christi–Edinburg Apr. 5, 2018, pet. denied) (noting appellant "received notice of her counsel's motion to withdraw a month before trial"); *Gendebien v. Gendebien*, 668 S.W.2d 905, 908 (Tex. App.—Houston [14th Dist.] 1984, no writ) ("Appellant had notice more than a month before the . . . trial setting."); *contra Villegas*, 711 S.W.2d at 626–27 (trial court abused its discretion by granting motion to withdraw filed two days before trial); *Jackson v. Jackson*, 556 S.W.3d 461, 471–72 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (trial court abused its discretion by granting motion to withdraw "filed the morning trial was scheduled to begin"). In both his written response to the motion to withdraw and in response to questioning by the trial court, Meza stated that he did not object to his attorney's withdrawal.

Meza complains, however, that the trial court did not give him an opportunity to counter his attorney's claims that the withdrawal was due to Meza's own fault or negligence. *See Villegas*, 711 S.W.2d at 626. It is true that the record shows the trial court stated that it did not "need to have a hearing on" the motion to withdraw and was "not going to read" Meza's written response to the motion. But the motion to withdraw noted Meza's pro se filing of a "Suggestion of Death of Roel Garza," and it described this filing as potentially "sanctionable" and "frivolous." *See Sims v. Sims*, 623 S.W.3d 47, 58 (Tex. App.—El Paso 2021, pet. denied) (concluding attorney's "motion and

her arguments adequately demonstrate[d] good cause for her to withdraw"). During the hearing on the motion, Meza's attorney reiterated that he did "not agree with" Meza's pro se filing and believed "there are issues with" it.[1] The attorney also stated that he would email the case file to Meza because he would "rather not have [Meza] in [the attorney's] office."

After it reviewed the motion to withdraw, the trial court questioned Meza about whether he understood the reasons his attorney offered in support of withdrawal and whether he objected to the withdrawal. The court also explained to Meza why an attorney might object to a client's pro se filings. On this record, the trial court could have reasonably concluded that Meza's unrepresented status was at least partly due to his own fault or negligence. *See Villegas*, 711 S.W.2d at 626.

The record also shows that the substance of the motion to withdraw satisfied the notice requirements of the Texas Rules of Civil Procedure and that Meza's trial attorney took actions to protect Meza's interest. *See* TEX. R. CIV. P. 10. For example, he filed a motion for continuance alongside his motion to withdraw. *See Ennadi v. Ennadi*, No. 01-21-00252-CV, 2023 WL 105109, at *5–6 (Tex. App.—Houston [1st Dist.] Jan. 5, 2023, pet. denied). The record also appears to show—and Meza does not dispute—that the attorney delivered the case file to Meza promptly after he withdrew.

Finally, we note that the clerk's record shows the parties filed fewer than 30 pages' worth of documents in the trial court before Meza's attorney sought to withdraw. While Meza estimated that a new attorney would need nine months to prepare for trial, the trial court questioned the parties about the complexity of this case, and it appears to have credited Garza's attorney's representations that the issues did not warrant a long continuance. Furthermore, the trial court told

---

[1] It is unclear why Meza believed filing the suggestion of death was necessary; both Garza's original petition and Meza's then-live answer acknowledged that Roel died several years before this lawsuit was filed.

Meza that it would consider granting a continuance if he hired another attorney and that attorney requested additional time to prepare. Under these circumstances, the trial court did not abuse its discretion by concluding that a new attorney would have sufficient time to investigate the case and prepare for trial. *See Villegas*, 711 S.W.2d at 626; *Robinson*, 2018 WL 1633516, at \*9.

Meza did not hire a new attorney. *See Robinson*, 2018 WL 1633516, at \*9 (noting appellant "did not demonstrate to the trial court her diligence in attempting to retain new counsel"). Instead, he filed a pro se motion for continuance at 3:18 p.m. the day before the trial was set to begin. But he also announced "ready" the next day when the case was called for trial. "Announcing 'ready' waives the right to subsequently seek a delay based upon any facts which are, or with proper diligence should have been, known at the time." *DeBoer v. Attebury Grain, LLC*, 684 S.W.3d 530, 535 (Tex. App.—Eastland 2024, no pet.) (citing *Reyna v. Reyna*, 738 S.W.2d 772, 775 (Tex. App.—Austin 1987, no writ)). When Meza announced ready, he knew that he did not have an attorney and that the trial court had not yet ruled on his pending pro se motion for continuance. Nevertheless, he did not bring the pro se motion for continuance to the court's attention or object to the court's failure to rule on it. The first time Meza complained about his pro se status after his "ready" announcement was well into his cross-examination of the first witness. We conclude that Meza's "ready" announcement waived his pro se request for a continuance. *DeBoer*, 684 S.W.3d at 535; *Reyna*, 738 S.W.2d at 775; *see also E.C., Jr. ex rel. Gonzales v. Graydon*, 28 S.W.3d 825, 827–28 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.).

The trial court did not act arbitrarily, unreasonably, or without reference to guiding rules or principles by denying either Meza's attorney's motion to withdraw or the two motions for continuance. We therefore overrule Meza's first issue.

### *Enforcement of the Contract*

In his second issue, Meza argues the trial court erred by enforcing the contract in Garza's favor because the contract was not in writing and Garza did not file her lawsuit within the applicable statute of limitations. We understand this as an argument that the evidence established Garza's claims were barred as a matter of law.

### *Standard of Review*

The statute of frauds and the statute of limitations are defensive issues on which Meza bore the burden of proof at trial. TEX. R. CIV. P. 94; *Gonzalez v. Gonzalez*, No. 04-20-00226-CV, 2021 WL 6127931, at \*10 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.); *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Because Meza did not request findings of fact and conclusions of law, we must presume that the trial court made all factual findings necessary to support its judgment. *See, e.g.*, *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

"When a party challenges the legal sufficiency of the evidence supporting an adverse finding on which she bore the burden of proof at trial, she must show the evidence establishes, as a matter of law, all vital facts in support of the issue." *Benavides v. Alexander*, 646 S.W.3d 14, 26 (Tex. App.—San Antonio 2021, pet. denied). "We review the evidence in the light most favorable to the finding and ignore all evidence to the contrary." *Id.* If we conclude there is no evidence to support the challenged finding, we must then review the entire record to determine whether the opposite proposition is established as a matter of law. *Id.* "This court may not reverse a judgment on legal insufficiency grounds unless the contrary proposition is conclusively established." *Id.*

*Statute of Frauds*

"The general statute of frauds requires that contracts for the sale of real estate must be in writing and signed by the parties in order to be enforceable." *Burrus v. Reyes*, 516 S.W.3d 170, 181 (Tex. App.—El Paso 2017, pet. denied); *see also* TEX. BUS. & COM. CODE § 26.01(a), (b)(4); TEX. PROP. CODE § 5.072 (executory contracts for the sale of real estate must be in writing). However, "the equitable doctrine of partial performance serves as an exception to the statute of frauds." *Elizondo v. Gomez*, 957 S.W.2d 862, 864 (Tex. App.—San Antonio 1997, writ denied). "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). The three elements required to satisfy this exception are "(1) payment of the consideration, whether it be in money or services; (2) possession by the vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor, or without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced." *Elizondo*, 957 S.W.2d at 864; *Burrus*, 516 S.W.3d at 181.

"Because the parties' agreement was for the sale of real property, it was subject to the statute of frauds as a matter of law." *Burrus*, 516 S.W.3d at 182. We must therefore determine whether there is more than a scintilla of evidence for each element of the partial performance exception.

As to the first element, Garza testified that she and Roel paid the agreed-upon purchase price of $55,000 in full. In the trial court, Meza appeared to agree with Garza on this point. In response to questions about whether he had received the full $55,000, Meza responded, "I never

said that I did not. Because that would be a thief, and I'm not a thief. . . . I received the checks. . . . I never say anything about not receiving money." Garza testified that she and Roel would not have paid that amount "just because. . . . It was for the property." Based on this testimony, a reasonable person could find that Garza paid the required consideration. *Id.* at 181.

Garza also offered testimony that would allow a reasonable person to find that she took possession of the property. *See id.* She testified that she and Roel used the property "for everything." They did not use the property as their residence, but Garza testified that they "were going to have it as [their] company." Additionally, some of the Garzas' employees lived in a trailer on the property and performed maintenance on the land. After Roel died, Garza herself maintained the property. Garza also testified that she and Roel used the property to store oil field equipment, "rolls of plastic pipe," "cedar posts for fencing," and "[a] house full of" personal and business records. Garza told the trial court that she had been denied access to this stored personal property ever since Meza locked her out in 2022. Garza also put the electric bills for the property into her name in 2010, and she testified that she had been paying those bills from 2010 until the date of trial.

Finally, Garza testified that she and Roel made valuable improvements to the property:

> We went in and we redid the fences around the whole property with King Ranch fencing, with very nice posts that we had. . . . And we also did all the electrical. We put in electrical—brand new electrical. The electricity that [Meza] had was very dangerous. We went in and had a company come in and redo all the electrical, starting from the boxes. We put brand-new boxes, we put in new outlets. We even put outlets outside for travel trailers to be parked. . . . We had made some improvements to the trailer house. . . . Doors. . . . The restroom needed to be worked on. The septic had to be worked on.

Garza testified that she and Roel spent "well over $10,000. Maybe 15" for the electrical work and fencing. *See id.* Meza agreed that the Garzas built "some kind of fence," though he testified "it was not like the one [Garza] described." Because there is some evidence that Meza visited the

property during the relevant time,[2] the trial court could have reasonably found that he was aware of and consented to these improvements.

In his appellate briefing, Meza relies heavily on *Kerley v. Branscome*, a 2024 opinion from the Waco Court of Appeals that he describes as "almost identical" to these facts. *See* No. 10-23-00059-CV, 2024 WL 382522 (Tex. App.—Waco Feb. 1, 2024, no pet.) (mem. op.). But nothing in *Kerley* indicates that the appellant/purported vendee in that case relied on the partial performance exception. *See id.* at *4 ("Kerley did not file any pleadings asserting claims or defenses[.]"). Additionally, *Kerley* was a forcible detainer case in which the appellant did not seek outright ownership of the property, but instead alleged "that he was entitled to notice of default and an opportunity to cure under Chapter 5 of the Texas Property Code." *Id.* We disagree with Meza's assertion that *Kerley* supports his position here.

Meza also argues that even if a valid contract existed, Garza's own material breach—specifically, her alleged failure to pay property taxes—excused Meza's performance under the contract. While Meza presented evidence that Garza did not pay the full amount of property taxes owed, he did not argue that failure was a prior material breach that excused his own performance. He therefore has not preserved this argument for our review. *See, e.g.*, *Perez v. Bradford's All Am.*, No. 13-17-00365-CV, 2018 WL 4087745, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2018, no pet.) (mem. op.).

As Meza notes in his reply brief, "The purpose of the Statute of Frauds is to remove uncertainty and reduce litigation." Here, however, no such uncertainty exists. Meza himself

---

[2] Meza's wife testified that she and Meza "came over [to the property] too many times" because they "got tired of calling" Garza "to come and take care of whatever had to be taken care of[.]" We note that as the factfinder in this matter, the trial court was free to believe some, all, or none of Meza's wife's testimony on this point. *See, e.g.*, *Gonzalez v. Gonzalez*, No. 04-23-00066-CV, 2025 WL 1129025, at *6 (Tex. App.—San Antonio Apr. 16, 2025, no pet.) (mem. op.).

testified that he and Roel reached an agreement for the conveyance of the land, and as noted above, he conceded that Garza and Roel paid the entire agreed-upon purchase price. This is not a case of an "alleged oral agreement," as Meza argues in this appeal; instead, this case involves an oral agreement whose existence was undisputed at trial. The result Meza seeks in this appeal is exactly the kind of inequity the partial performance exception to the statute of frauds is intended to prevent. *See Elizondo*, 957 S.W.2d at 864; *Breezevale*, 82 S.W.3d at 439.

For these reasons, the record does not conclusively establish that Garza's breach of contract claim was barred by the statute of frauds. We therefore may not reverse the trial court's judgment on that basis. *See Benavides*, 646 S.W.3d at 26.

*Limitations*

A party who relies on a statute of limitations defense "bears the initial burden to plead, prove, and secure findings to sustain its plea of limitations." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *De los Santos v. Comm'n for Lawyer Discipline*, 547 S.W.3d 640, 648 (Tex. App.—San Antonio 2017, pet. denied). The statute of limitations for "specific performance of a contract for the conveyance of real property" is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(1).

"A cause of action for breach of contract generally accrues at the time of breach or when the claimant has notice of facts sufficient to place him on notice of the breach." *Spring v. Walthall, Sachse & Pipes, Inc.*, No. 04-09-00474-CV, 2010 WL 2102988, at \*3 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.) (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). "A party breaches a contract when he or she fails to perform a duty or violates an obligation required by the contract." *Spring*, 2010 WL 2102988, at \*3; *Roberts v. Clark*, 188 S.W.3d 204, 209 (Tex. App.—Tyler 2002, pet. denied). "However, if the parties' agreement contemplates a continuing

contract for performance, the limitations period does not usually commence until the contract is fully performed." *Lyle v. Jane Guinn Revocable Tr.*, 365 S.W.3d 341, 355 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (internal quotation marks and alterations omitted).

Here, Garza's live petition alleged a "continuing breach of contract and delayed discovery in this cause of action." She testified that she and Roel fully performed their contractual obligations by paying the agreed-upon purchase price of $55,000 no later than 2012. As noted above, Meza agreed at trial that he had received the full purchase price. Garza testified that after she and Roel completed the payments, they demanded that Meza sign the deed. She did not testify, however, that he unequivocally refused to do so at that time; instead, she testified that he told them "he wanted us to find a lawyer to do the paperwork." The lawyer they contacted told them, "no, that we were not the sellers, we were the buyers, we could not do it, [Meza] had to do it." In 2016, after Roel died, Garza wrote Meza a letter asking him "to come over to [her] house and discuss the transfer of property." Garza did not testify about any further attempts she or Roel made to obtain the deed before she filed this lawsuit in 2022.

Garza further alleged and testified that Meza attempted to sell the property in 2022 or 2023, after she had already paid the full purchase price. She also testified that Meza locked her out of the property in January or February of 2022 and that ever since then, she had been excluded from the land, its buildings, and the personal property she stored there.

As the party asserting a limitations defense, Meza bore the burden to plead and prove: (1) the date when Garza's breach of contract action accrued; and (2) that date was more than four years before Garza filed her lawsuit on February 28, 2022. *See Encino Ranch Homeowners Ass'n, Inc. v. Santos*, — S.W.3d —, No. 04-24-00699-CV, 2026 WL 40956, at *4 (Tex. App.—San Antonio Jan. 7, 2026, pet. filed). Meza's original answer alleged that Garza "knew or should have

known in 2012 that a deed of transfer to her and her husband would have been deliverable and due in 2012," but his amended answer abandoned this factual allegation. *See Denton Cnty. Elec. Coop., Inc. v. Hackett*, 368 S.W.3d 765, 772 (Tex. App.—Fort Worth 2012, pet. denied) ("As a general rule, an amended pleading supersedes the original pleading."). Outside of his superseded original answer, Meza did not identify any specific date or event that authorized Garza to seek a judicial remedy. *See Encino Ranch*, 2026 WL 40956, at *4; *Spring*, 2010 WL 2102988, at *3.

But even if we consider Meza's superseded original answer, he offered no response to Garza's claim of a "continuing" breach. After reviewing the entire record, we conclude that under these unique circumstances, the trial court reasonably could have found that Meza's failure to turn over the deed for more than ten years after he received the full purchase price, his subsequent exclusion of Garza from the land, and his attempt to sell the property constituted continuing breaches that "cause[d] the accrual of the cause of action to occur each day that there was a breach." *See Dvorken v. Lone Star Indus., Inc.*, 740 S.W.2d 565, 567 (Tex. App.—Fort Worth 1987, no writ) (considering a "continuing" breach). Under the applicable standard of review, we decide Meza has not satisfied his burden to conclusively establish that Garza's claim was barred by limitations. *See Benavides*, 646 S.W.3d at 26.

Because we have concluded that Meza's statute of frauds and limitations arguments lack merit, we overrule his second issue.

### *Specific Performance*

In his third issue, Meza argues the trial court erred by granting Garza's request for specific performance—the delivery of the deed—because specific performance is an equitable remedy that is barred by unclean hands and laches. Both unclean hands and laches are affirmative defenses that are waived if they are not specifically pleaded. *See Kelly v. Tracy*, No. 01-18-00913-CV, 2022 WL

2837335, at *11 (Tex. App.—Houston [1st Dist.] July 21, 2022, no pet.) (mem. op.); *Custer v. Wells Fargo Bank, N.A.*, No. 03-15-00362-CV, 2016 WL 1084165, at *3 (Tex. App.—Austin Mar. 18, 2016, pet. dism'd w.o.j.) (mem. op.). Meza did not plead unclean hands in either his original or amended answer. While he pleaded laches in his original answer, his subsequent amended answer did not include that defense. *See Hackett*, 368 S.W.3d at 772. We therefore conclude that he abandoned that defense below. *See* TEX. R. CIV. P. 65 (amended pleading takes the place of the original); *Wren v. Tex. Emp. Comm'n*, 915 S.W.2d 506, 508 (Tex. App.—Houston [14th Dist.] 1995, no writ) (same).

For these reasons, Meza did not preserve his laches and unclean hands defenses for our review. We overrule his third issue.

### Attorney's Fees

In his final issue, Meza argues Garza did not present sufficient evidence to support an award of attorney's fees. We agree.

A party who prevails in a breach of contract action, as Garza did here, may recover reasonable and necessary attorney's fees incurred in the litigation. TEX. CIV. PRAC. & REM. CODE § 38.001(b); *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484, 488–89 (Tex. 2019). However, an award of attorney's fees must be supported by sufficient evidence. *See, e.g.*, *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

After the parties finished presenting evidence but before the trial court signed its written judgment, Garza's attorney submitted an affidavit in support of the claim for attorney's fees.[3] That affidavit stated that the attorney had spent "more than 30 hours" working on the case and attested:

---

[3] Because we conclude that the affidavit was facially insufficient to support an award of attorney's fees, we need not address Meza's contention that the trial court erred by accepting the affidavit after the close of evidence. TEX. R. APP. P. 47.1.

It is my [Garza's attorney's] opinion that $7,500.00 (30 hours x $250 [an] hour) are reasonable attorney's fees based upon the following factors:

1. The novelty and difficulty of the issue involved, the skill required to provide the legal services properly, and the experience, reputation, and expertise of the lawyer performing the services. I graduated from the University of Texas School of Law in May of 1996. I was licensed in November of 1997 and have been practicing law for over 27 years.

2. The time and labor involved to perform the legal services properly, and

3. The fee of $250.00 per hour is customarily charged in the community for similar services. $250.00 per hour is a reasonable fee customarily charged in Jim Wells and Duval County.

Based on this affidavit, the trial court awarded Garza $7,500 in attorney's fees.

It erred by doing so. Garza's attorney's affidavit provided a lodestar amount—*i.e.*, it identified the number of hours expended on the litigation and an hourly rate charged for that time. *See Rohrmoos*, 578 S.W.3d at 492. But the Texas Supreme Court has held that "proof of reasonable hours 'should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked.'" *Id.* at 494–95 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012)). Generalities "about an attorney's experience, the total amount of fees, and the reasonableness of the fees . . . are not sufficient to support a fee-shifting award under the lodestar method[.]" *Rohrmoos*, 578 S.W.3d at 496. While "[c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary," such records "are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.* at 502 (emphasis in original).

Other than the paragraphs quoted above, Garza's attorney's affidavit did not include any further details about the reasonableness or necessity of the fee, and it was not supported by any

invoices or other documentation.[4] For example, the affidavit did not include any information about how the claimed 30 hours' of work "were devoted to any particular task or category of tasks." *El Apple*, 370 S.W.3d at 763. It "provides none of the specificity needed for the trial court to make a meaningful lodestar determination." *Id.* And without that specificity, we have "little basis upon which to conduct a meaningful review of the fee award." *Id.*

Garza's attorney's affidavit contained the same kind of generalities the Texas Supreme Court rejected in *Rohrmoos*. As a result, it was insufficient to support the award. *See Rohrmoos*, 578 S.W.3d at 496. We therefore reverse the trial court's judgment as to the attorney's fee award and remand this matter to the trial court for a redetermination of fees consistent with this opinion. *See id.* at 506 (remanding for redetermination of fees after concluding evidence was legally insufficient to support fee award).

## CONCLUSION

We reverse the portion of the trial court's judgment that awards attorney's fees to Garza and remand this case for further proceedings on the attorney's fee claim. We affirm the remainder of the judgment.

Lori I. Valenzuela, Justice

---

[4] While the first page of the affidavit stated, "See attached letter" and suggested that the "attached letter" included further details about "the amount of time and attorney fees (including legal professionals under my supervision) expended in this matter," the version in the appellate record does not contain any attachments.