

# NUMBER 13-20-00193-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DR. KELLY ISBELL,                                                    Appellant,

v.

JEANNE RUSSELL,
MISSION STREET CONSULTING LLC,
AND KATE ROGERS,                                                   Appellees.

## On appeal from the 166th District Court
## of Bexar County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva
Memorandum Opinion by Justice Benavides**

This appeal concerns the sufficiency of appellant Dr. Kelly Isbell's pleadings

following special exceptions.[1] Isbell appeals an order which dismisses her claims against

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio

appellees Jeanne Russell, Mission Street Consulting LLC (MSC), and Kate Rogers with prejudice. By four issues, Isbell asserts that the trial court erred by dismissing her claims against appellees because the court (1) treated appellees' special exceptions as a plea to the jurisdiction; (2) treated appellees' motion to dismiss as a Rule 91a dismissal of a baseless cause of action, *see* TEX. R. CIV. P. 91a; (3) treated appellees' motion to dismiss as a no-evidence motion for summary judgment; and (4) dismissed Isbell's claims "even though [she] had amended her pleadings as required by [the] trial court's order as to special exceptions." We reverse and remand.

## I.    BACKGROUND

On April 22, 2019, Isbell filed her "Plaintiff's Second-Amended Petition" against Russell, MSC, Rogers, and Melissa Alcala. According to the briefs, Alcala was subsequently dismissed from the case. Isbell alleged that "[a]fter an extensive, nationwide search," she "was hired to serve as the founding principal for the CAST Tech Charter School" (CAST Tech) in the San Antonio Independent School District (SAISD). Isbell stated that "[o]n May 8, 2017, [she] was improperly fired, the victim of a power play by persons outside" of SAISD. Isbell alleged that she was placed on administrative leave "abruptly and without any advance notice, written evaluations, emails[,] or letters stating poor performance on any topic or task," "ordered to immediately leave the CAST Tech premises," and "ordered not to speak with anyone, which would have included the other Founders[2] and other industry advisors for CAST Tech." Isbell referred to this series of

---

pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. The parties have not identified a conflict between the precedent of the Fourth Court of Appeals and that of this Court on any issues relevant to this appeal. *See* TEX. R. APP. P. 41.3.

[2] Isbell generally used the term "Founders" to designate those parties who were instrumental in

events as the "Coup." Subsequently, the SAISD School Board voted to terminate Isbell's employment, an event Isbell identifies as the "Firing." According to Isbell, Russell, MSC, and Rogers served as "outside consultants" for CAST Tech. Isbell alleged causes of action against Russell, MSC, and Rogers for tortious interference and conspiracy.

On June 7, 2019, appellees filed "Special Exceptions and First Amended Answer to Plaintiff's Second Amended Petition." In terms of special exceptions, the appellees alleged that Isbell "has failed to allege any valid contract that could support a tortious interference claim," that she "has not alleged facts that could support the essential element of willful and intentional interference with a contract," and that she "fail[ed] to plead all of the elements of [a] cause of action for conspiracy." Appellees requested the trial court to sustain their special exceptions and to require Isbell to amend her pleadings, or alternatively, to strike her claim for conspiracy.[3]

On September 18, 2019, the trial court and the parties signed an "Agreed Order on Defendants' Special Exceptions." The order states, in relevant part:

> IT IS ORDERED that Plaintiff shall amend her petition as to the claims for tortious interference and conspiracy as to each Defendant: [Russell, MSC, and Rogers], to give fair notice of the allegations and claims asserted specifically against each Defendant.
>
> Defendants' Special Exception No. 1. is SUSTAINED. Plaintiff shall replead and assert with specificity the contract(s) she alleges were breached as a basis for Plaintiffs' tortious interference claim. It is further ORDERED, Plaintiff shall further identify the specific contractual provisions—as to each

---

creating CAST Tech and identified them in this pleading and supplemental pleadings as: Charles Butt, H-E-B Grocery Company, LP, SAISD, San Antonio Foundation for Excellence in Education, Inc. d/b/a SAISD Foundation, Rogers, and Russell.

[3] On July 8, 2019, Isbell filed "Plaintiff's Supplement No. 1 to First Amended Petition." This pleading should have been titled as a supplement to the "Plaintiff's Second-Amended Petition" but was mistakenly designated otherwise. "Plaintiff's Second-Amended Petition" concerned allegations regarding Alcala and is thus not relevant to our analysis in this appeal.

contract—she alleges were breached and the actions by each Defendant she alleges were the basis of the breach. [*Gil Ramirez Grp., LLC v. Hous. Indep. Sch. Dist.*, No. 4:10-cv-4872, 2013 WL 3229682, at \*11 (S.D. Tex. June 25, 2013)].

Defendants' Special Exception No. 2. is SUSTAINED. Plaintiff . . . shall replead and assert with specificity the basic facts identifying and supporting the requisite elements of her tortious interference claim against each Defendant. Specifically, Plaintiff shall assert with specificity, the actions or statements made by each separate Defendant which she alleges constitute a willful and intentional interference.

Defendants' Special Exception No. 3. Is SUSTAINED. Plaintiff . . . shall replead and assert the basic facts supporting the requisite elements of her conspiracy claim. It is further ORDERED, Plaintiff shall plead with specificity the overt acts she alleges, as to each Defendant, constitute an unlawful or tortious act.

It is [f]urther ORDERED that by October 17, 2019[,] Plaintiff shall file an amended pleading as ORDERED herein. Plaintiff's failure to amend pleadings as ORDERED herein shall cause Plaintiff's pleadings to be deemed stricken without further action by this Court.

Subsequently, on October 17, 2019, Isbell filed "Plaintiff's Supplement No. 2 to First-Amended Petition."[4] As noted in the briefing, this pleading was mistitled and acted as a supplement to "Plaintiff's Second-Amended Petition." The body of Isbell's Supplement No. 2 comprises ten pages of substantive allegations and includes twenty-nine separate enumerated paragraphs.

On February 14, 2020, the appellees filed "Defendants' Motion to Enter Final Order." According to appellees' motion, the trial court's dismissal of other parties to the litigation had "rendered [Isbell's] allegations [against them] entirely nonsensical." Appellees asserted that they had filed special exceptions asking Isbell to replead "with requisite specificity the basis for her tortious interference and conspiracy claims," Isbell

---

[4] A supplemental pleading is made as "a response to the last preceding pleading by the other party." TEX. R. CIV. P. 69; *see Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 53–54 (Tex. 2003).

4

had agreed to replead, and the parties and trial court had entered the agreed order sustaining appellees' special exceptions. According to appellees, Isbell's amended pleading "fails to comply with the Agreed Order," thus appellees filed their motion "to enforce the Parties' Agreed Order and strike [Isbell's] pleadings [] pursuant to the terms of the Agreed Order." The appellees argued that the agreed order constitutes an enforceable agreement under Texas Rule of Civil Procedure 11, Isbell agreed to a "heightened pleading standard," and Isbell failed to amend her pleadings according to the agreed order. *See* TEX. R. CIV. P. 11. The appellees requested the trial court to "enforce the terms of the Parties' Agreed Order pursuant to TEX. R. CIV. P. 11 and dismiss [Isbell's] claims with prejudice."

On February 24, 2020, Isbell filed "Plaintiff's Response to Motion to Enter." Isbell asserted that, since the time she had filed her amended pleadings, she had sent interrogatories and requests for production to Russell, MSC, and Rogers, and had sent notices of intention to take depositions by written questions with subpoenas duces tecum to Pedro Martinez, Superintendent of SAISD, and SAISD. Isbell argued that appellees' motion to enter judgment should be denied because her supplemental pleading "was sufficient to satisfy [the trial court's agreed order] and gives fair notice to [appellees] of the facts necessary to begin a defense of [Isbell's] claims for [t]ortious [i]nterference and [c]onspiracy," and the fact that appellees filed their motion "only after the issuance of [Isbell's] discovery requests . . . is a clear indication that [appellees'] [m]otion is without merit and is merely a procedural attempt to avoid [Isbell's] prosecution of this matter."

That same day, the trial court held a hearing on appellees' motion to enter a final order. At the hearing, appellees informed the trial court that they were there "to enforce a

Rule 11 agreed order" which required Isbell "to replead to very specific pleading standards." Appellees asserted that Isbell's supplemental pleading was deficient because there was "no specific contractual provision named; no contract that's identified as being breached; and . . . no specific actions by the remaining [appellees] about interference." Appellees asserted that they "still cannot identify . . . the factual basis of Isbell's claims" regarding tortious interference or conspiracy. Appellees argued that the agreed order acted as an enforceable Rule 11 agreement and "[t]here is no reason why [Isbell] should be allowed to replead or to be held to any standard other than this, and the Court has a ministerial duty to enforce the order as agreed by the parties and entered by the Court."

The trial court questioned appellees, "specifically, what are you asking the Court," and inquired whether appellees were "asking to strike [Isbell's] pleadings." Appellees informed the court that the agreed order included language providing that: "Plaintiff's failure to amend pleadings as ordered shall cause plaintiff's pleadings to be deemed stricken without further action by this Court." Appellees asserted that Isbell's pleadings were thus automatically struck when she "failed to amend as . . . was required," and so they were requesting the court to dismiss Isbell's case with prejudice. In response, the court asked appellees, "[s]o why does this Court have to do anything," because "it sounds like [the pleadings are] already stricken and gone." Appellees informed the court that Isbell had propounded discovery and was proceeding with her case.

Isbell responded to the foregoing colloquy by asserting that she "supplemented [her pleadings] in accordance with the order." She discussed her supplemental pleading and the background of the lawsuit and argued that appellees were attempting to avoid pending discovery. At the conclusion of the hearing, the trial court took the issue under

6

advisement.

The following day, on February 25, 2020, the trial court signed an "Order for Dismissal with Prejudice" which provided that all of Isbell's claims against appellees were dismissed with prejudice. This appeal ensued.

## II. STANDARD OF REVIEW

"A trial court has broad discretion in ruling on special exceptions." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam); *see Chambers v. Am. Hallmark Ins. Co. of Tex.*, 465 S.W.3d 389, 397 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.); *Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 602 (Tex. App.—Austin 2015, no pet.); *Frankoff v. Norman*, 448 S.W.3d 75, 79 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Martin v. Clinical Pathology Lab'ys, Inc.*, 343 S.W.3d 885, 891 (Tex. App.—Dallas 2011, pet. denied). A trial court abuses its discretion when it (1) acts with disregard to guiding rules or principles, (2) acts in an arbitrary and unreasonable manner, or (3) fails to correctly analyze or apply the law. *See In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). "On review, the trial court's ruling will be reversed only upon a showing of abuse of discretion." *De los Santos v. Comm'n for Lawyer Discipline*, 547 S.W.3d 640, 650 (Tex. App.—San Antonio 2017, pet. denied); *see Chambers*, 465 S.W.3d at 397; *James v. Underwood*, 438 S.W.3d 704, 715 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

"We review a trial court's dismissal of a case upon special exceptions for failure to state a cause of action as an issue of law, using a de novo standard of review." *Neff v. Brady*, 527 S.W.3d 511, 528 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.]

7

2005, pet. denied)); *see Chambers*, 465 S.W.3d at 397; *Cerda v. RJL Ent., Inc.*, 443 S.W.3d 221, 225 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied); *Martin*, 343 S.W.3d at 891; *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 507 (Tex. App.—Fort Worth 2001, pet. denied). In our review, we take the "allegations, facts, and interferences in the pleadings as true and view them in a light most favorable to the pleader." *Cerda*, 443 S.W.3d at 225; *see Gatten v. McCarley*, 391 S.W.3d 669, 673–74 (Tex. App.—Dallas 2013, no pet.) ("We accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in Gatten's pleadings."). *Martin*, 343 S.W.3d at 891 ("When conducting our review, we accept as true all material factual allegations in the pleadings and all facts reasonably inferable from those allegations."). When the pleading does not state a cause of action, the trial court does not abuse its discretion in dismissing the case. *See Cerda*, 443 S.W.3d at 225; *Gatten*, 391 S.W.3d at 674.

## III. PLEADINGS

Texas Rule of Civil Procedure 45 provides that a petition shall "consist of a statement in plain and concise language of the plaintiff's cause of action," and "[t]hat an allegation be evidentiary or be of legal conclusion shall not be grounds for an objection when fair notice to the opponent is given by the allegations as a whole." TEX. R. CIV. P. 45(b). Further, "[a]ll pleadings shall be construed so as to do substantial justice." *Id.* R. 45(c). A "pleading which sets forth a claim for relief" must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." *Id.* R. 47(a); *see De los Santos*, 547 S.W.3d at 650.

8

## A.    Fair Notice

"'Texas follows a fair-notice standard for pleading', which 'measures whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response.'" *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 61 (Tex. 2021) (quoting *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017)); *see Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). "A cause of action is sufficiently pleaded only if the petition gives fair notice of the claim involved." *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 849 (Tex. 2021).

Under Rule 47, the supreme court has held that a "pleading sufficiently provides 'fair notice of the claim involved' if the opposing party can ascertain from the pleading the nature and basic issues in controversy and what testimony will be relevant." *In re Allstate Indem. Co.*, 622 S.W.3d 870, 879 (Tex. 2021) (orig. proceeding) (quoting *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896); *see First United Pentecostal Church of Beaumont*, 514 S.W.3d at 224–25. This is the "key inquiry." *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018) (per curiam); *see Seton Family of Hosps. v. White*, 593 S.W.3d 787, 793 (Tex. App.—Austin 2019, pet. denied).

The pleadings must provide fair notice of the essential factual allegations, the claim, and the relief sought. *Montelongo v. Abrea*, 622 S.W.3d 290, 300 (Tex. 2021); *Kinder Morgan SACROC, LP*, 622 S.W.3d at 849. The "fair notice" standard "relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity." *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App.—Dallas 2011, no pet.); *see*

*Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (same). "Rule 45 does not require that the plaintiff set out in [its] pleadings the evidence upon which [it] relies to establish [the] asserted cause of action." *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988)); *see Chambers*, 465 S.W.3d at 394; *Dall. Area Rapid Transit v. Morris*, 434 S.W.3d 752, 760–61 (Tex. App.—Dallas 2014, pet denied). Further, "[a] court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *see Chambers*, 465 S.W.3d at 394; *Dall. Area Rapid Transit*, 434 S.W.3d at 761; *see also* TEX. R. CIV. P. 45(b).

Speaking pragmatically, the test for determining whether a pleading gives adequate notice is whether an opposing attorney of reasonable competence, in examining the pleadings, can ascertain the nature and the basic issues of the controversy and the relevant testimony. *See De los Santos*, 547 S.W.3d at 650; *Lawrence v. Reyna Realty Grp.*, 434 S.W.3d 667, 675 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Wright v. Fowler*, 991 S.W.2d 343, 353 (Tex. App.—Fort Worth 1999, no pet.).

**B.     Special Exceptions**

The appropriate method to address the sufficiency of a party's pleadings is by special exceptions. *See In re Helix Energy Sols. Grp.*, 440 S.W.3d 167, 175 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding); *Ortiz v. Patterson*, 378 S.W.3d 667, 675 (Tex. App.—Dallas 2012, no pet.). The purpose of special exceptions is to "compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action." *Baylor Univ.*, 221 S.W.3d at 635 (citing *Friesenhahn v. Ryan*,

10

960 S.W.2d 656, 658 (Tex. 1998)); *see De los Santos*, 547 S.W.3d at 650; *James*, 438 S.W.3d at 715; *Shaw v. Lemon*, 427 S.W.3d 536, 546 (Tex. App.—Dallas 2014, pet. denied); *see also* TEX. R. CIV. P. 91. "An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment." *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897; *see Chambers*, 465 S.W.3d at 397.

Under Rule 91, "[a] special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to." TEX. R. CIV. P. 91; *see Chambers*, 465 S.W.3d at 398; *Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "General allegations that the petition is vague, indefinite, or does not state a cause of action are not sufficient to identify the defect." *Chambers*, 465 S.W.3d at 398. "If the special exception is not specific, it is a prohibited general demurrer and should be overruled." *Id.*; *see* TEX. R. CIV. P. 90 ("General demurrers shall not be used."). "We liberally construe pleadings; special exceptions are only a challenge to determine if 'fair notice' requirements have been met." *Aldous*, 405 S.W.3d at 857. And "[i]t is not a valid objection to generally complain that the pleading does not set out enough factual details if fair notice of the claim is given." *Id.* at 857. Special exceptions "cannot inject factual allegations that do not appear in the pleading." *Neff*, 527 S.W.3d at 530.

## C. Ruling

"Generally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the pleading defect is of a type that amendment cannot cure." *Baylor Univ.*, 221 S.W.3d at 635; *see Friesenhahn*, 960 S.W.2d

11

at 658; *In re XTO Energy Inc.*, 471 S.W.3d 126, 137 (Tex. App.—Dallas 2015, orig. proceeding); *Shaw*, 427 S.W.3d at 546; *Gatten*, 391 S.W.3d at 673. The right to amend exists only if the defect is curable. *Baylor Univ.*, 221 S.W.3d at 635; *Ford v. Performance Aircraft Servs., Inc.*, 178 S.W.3d 330, 336 (Tex. App.—Fort Worth 2005, pet. denied). "If there is no reasonable probability that further amendment would disclose facts legally sufficient to sustain a cause of action, the trial court may properly refuse further leave to amend." *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). Further, the right to amend is not unlimited and it "does not extend to the privilege of multiple opportunities to amend in the face of repeated grants of special exceptions." *Ford*, 178 S.W.3d at 336 (quoting *Mowbray*, 76 S.W.3d at 677).

However,

> if a plaintiff makes a good faith attempt to amend his petition in response to the trial court's sustaining of a defendant's special exceptions, the trial court may not dismiss the plaintiff's amended petition unless the defendant files special exceptions to the revised pleadings, the court sustains the new special exceptions, and the court gives the plaintiff the opportunity to amend the revised pleadings.

*Humphreys v. Meadows*, 938 S.W.2d 750, 753 (Tex. App.—Fort Worth 1996, writ denied); *see Albright v. Tex. Dep't of Human Servs.*, 859 S.W.2d 575, 582–83 (Tex. App.—Houston [1st Dist.] 1993, no writ) (stating that where the defendants did not file special exceptions to the plaintiffs' revised pleading, the plaintiffs were entitled to an opportunity to amend the revised pleadings, and the trial court abused its discretion in dismissing the lawsuit without providing this option); *Gallien v. Wash. Mut. Home Loans, Inc.*, 209 S.W.3d 856, 863 (Tex. App.—Texarkana 2006, no pet.) ("It is also clear that, although no special exceptions had been sustained as to these amended pleadings, the trial court's

12

order summarily disposed of the bulk of the Galliens' case without affording them their opportunity to replead."); *see also Chambers*, 465 S.W.3d at 394–95 (discussing the plaintiff's "good faith" attempt to replead and construing the amended pleading liberally in the absence of new special exceptions); *Frahm Family Ltd. v. Stanley*, No. 01-97-01275-CV, 1998 WL 350110, at *2 (Tex. App.—Houston [1st Dist.] June 25, 1998, no pet.) (mem. op.) ("Appellees did not file another special exception to the revised pleading. Therefore, the basis of the subsequent order dismissing for failure to amend is incorrect. The trial court abused its discretion in dismissing this action.").

## IV.  ANALYSIS

Because it is dispositive, we first address Isbell's fourth issue. In this issue, Isbell asserts that the trial court abused its discretion by dismissing her claims when she had amended her pleadings as required by the trial court's order on the special exceptions. In contrast, appellees assert that "[t]he judgment below was entered according to the trial court's ministerial, nondiscretionary duty to enter judgment pursuant to the terms of the Rule 11 Order."[5] They argue that "[u]nder the appropriate standard of review, [Isbell] can only challenge the judgment by showing that the trial court violated a statute or exceeded

---

[5] This matter appears before this Court in an unusual procedural posture. Typically, litigants file motions for summary judgment to address alleged unsolved pleading failures following special exceptions. "Summary judgment based on a pleading deficiency may be proper if a party has had an opportunity, by special exception, to amend and fails to do so, or files an additional defective pleading." *Chambers v. Am. Hallmark Ins. Co. of Tex.*, 465 S.W.3d 389, 393–94 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.); *see Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Gallien v. Wash. Mut. Home Loans, Inc.*, 209 S.W.3d 856, 866 (Tex. App.—Texarkana 2006, no pet.); *see also Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974) (recognizing that "a party may plead himself out of court" or "may plead facts which affirmatively negate his cause of action," and stating that "[i]n such instance it is proper to grant the defendant's motion for summary judgment"). Alternatively, litigants may file a Rule 91a motion to dismiss. *See* TEX. R. CIV. P. 91a; *In re Shire PLC*, 633 S.W.3d 1, 25–26 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]) (comparing and contrasting Rule 91a motions to dismiss and special exception procedure).

the limits of judicial power," and that because Isbell did not raise these arguments, they are waived. The appellees further argue, in the alternative, that even if the correct standard of review is abuse of discretion, the trial court did not abuse its discretion "in enforcing the Rule 11 Order" because Isbell "agreed to replead certain allegations with specificity as to each Defendant[] but failed to do so."

## A.     Standard of Review

As a threshold matter, we first address the appropriate standard of review to apply to the trial court's ruling. Isbell generally argues that we review the trial court's ruling as one regarding special exceptions under an abuse of discretion standard. In contrast, appellees argue that the trial court's decision should be reviewed as an enforcement of a Rule 11 agreement. *See* TEX. R. APP. P. 11.

Rule 11 states that, "[u]nless otherwise provided in [the rules of civil procedure], no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." *Id.* "A trial court has a ministerial duty to enforce a valid Rule 11 agreement." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam). We construe Rule 11 agreements under the same rules as we would a contract. *Id.*; *Transamerica Corp v. Braes Woods Condo Ass'n, Inc.*, 580 S.W.3d 733, 737 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "We do not give a Rule 11 agreement greater effect than the parties intended." *Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 560–61; *Austin v. Austin*, 603 S.W.2d 204, 207 (Tex. 1980). In order to be effective, a Rule 11 agreement must consist of "a written memorandum which is complete within itself in every material detail, and

14

which contains all of the essential elements of the agreement." *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978); *see Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 560 (same); *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (same).

The terminology used by the appellees in discussing the events is inexact insofar as the record does not indicate that the parties entered into a separate Rule 11 agreement, and instead, the appellees discuss the agreed order itself as a Rule 11 agreement.[6] However, an agreed order that meets the requirements of Rule 11 can be enforced as such an agreement. *See In re Marriage of Comstock*, No. 01-19-00722-CV, 2021 WL 4466012, at *7, __ S.W.3d __, __ (Tex. App.—Houston [1st Dist.] Sept. 30, 2021, no pet. h.) (construing an agreed docket control order as an agreement under Rule 11); *Trevino v. Hous. Orthopedic Ctr.*, 831 S.W.2d 341, 344 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Miller v. Kossey*, 802 S.W.2d 873, 876 (Tex. App.—Amarillo 1991, writ denied); *see also Kerulis v. Granbury Lake Props., Inc.*, No. 2-05-247-CV, 2006 WL 1791617, at *3 (Tex. App.—Fort Worth June 29, 2006, no pet.) (mem. op.). When a trial court renders judgment based on a Rule 11 agreement, the signed judgment must comply literally with the terms of the agreement; stated otherwise, a judgment rendered on a Rule 11 agreement must be "in strict or literal compliance" with the terms recited into the record and the trial court cannot remove or add material terms. *See Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam); *Hudson v. Aceves*, 516 S.W.3d 529, 538 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *Baylor Coll. of Med. v.*

---

[6] We note that the agreed order does not, in and of itself, constitute a final judgment. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014) (orig. proceeding) (per curiam) ("[N]othing in the rules of procedure prohibits a Rule 11 agreement from being, itself, an agreed judgment, so long as the agreement meets the requirements for a final judgment.").

15

*Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Donzis v. McLaughlin*, 981 S.W.2d 58, 63 (Tex. App.—San Antonio 1998, no pet.); *Tinney v. Willingham*, 897 S.W.2d 543, 544 (Tex. App—Fort Worth 1995, no writ); *see also Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam); *see also In re S.R.S.*, No. 12-20-00130-CV, 2020 WL 4463122, at *3 (Tex. App.—Tyler July 15, 2020, no pet.) (mem. op.).

We disagree with appellees' contention that the trial court had a ministerial duty to enforce the agreed order by dismissing the lawsuit. Isbell did not stand on her pleadings after the trial court sustained appellees' special exceptions. She amended her pleadings by filing "Plaintiff's Supplement No. 2 to First Amended Petition" on October 17, 2020, in accordance with the deadline imposed by the agreed order. As stated previously, this supplement is in substance ten pages long and includes twenty-nine separate paragraphs. The agreed order did not, in and of itself, address the sufficiency of these amendments. Stated otherwise, any agreement embodied in the agreed order does not and could not encompass a conclusion regarding the sufficiency of Isbell's future amendments. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996) (orig. proceeding) (per curiam) (noting that trial courts cannot consider evidence outside the bounds of the Rule 11 agreement). The determination regarding whether Isbell's pleadings sufficed to meet the special exceptions was judicial and discretionary.[7] *See*

---

[7] The Texas Supreme Court has described the difference between ministerial and discretionary acts thusly:

> The distinction between ministerial and judicial and other official acts seems to be that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial.

*Baylor Univ.*, 221 S.W.3d at 635; *Chambers*, 465 S.W.3d at 397; *Park*, 457 S.W.3d at 602.

## B. Analysis

The trial court's order sustained three special exceptions and required Isbell to amend her pleadings as to tortious interference and conspiracy "to give fair notice" of her claims. We examine the agreed order and Isbell's supplemental pleadings regarding these causes of action.

### 1. Applicable Law

The elements of a cause of action for tortious interference with a contract are: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *see Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017); *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 853 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also Dall. Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 761, n.38 (Tex. 2019).

Civil conspiracy is not an independent tort but requires an underlying tort that has caused damages. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the

*State Bar of Tex. v. Heard*, 603 S.W.2d 829, 832 (Tex. 1980) (orig. proceeding) (quoting *Comm'r of Gen. Land Office v. Smith*, 5 Tex. 471, 479 (1849)).

persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 222.[8]

## 2. Special Exceptions

The trial court's order required Isbell to amend her claims for tortious interference and conspiracy "to give fair notice of the allegations and claims asserted specifically against each [appellee]." The order required Isbell to file an amended pleading by October 17, 2019. It is undisputed that Isbell filed an amended pleading by this deadline. What is at issue in this appeal is whether or not Isbell amended her pleadings in accordance with the "fair notice" standard and the three special exceptions sustained in the agreed order. The agreed order, in sum, ordered Isbell to file an amended pleading and:

> assert with specificity the contract(s) she alleges were breached as a basis for [her] tortious interference claim[;]
>
> further identify the specific contractual provisions—as to each contract— she alleges were breached and the actions by each [appellee] she alleges were the basis of the breach[;]
>
> assert with specificity the basic facts identifying and supporting the requisite elements of her tortious interference claim against each [appellee;]

---

[8] The agreed order on special exceptions focused on the breach of a contract. To prevail on a claim for tortious interference with a contract, the plaintiff must present evidence that a party induced another to breach a contract and thereby interfered with the plaintiff's rights under the contract. *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017); *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995); *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). We note that under the fair notice pleading standard, a plaintiff is not required to explicitly allege all elements of a cause of action. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *Chambers v. Am. Hallmark Ins. Co. of Tex.*, 465 S.W.3d 389, 397 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.); *Dall. Area Rapid Transit v. Morris*, 434 S.W.3d 752, 761 (Tex. App.—Dallas 2014, pet denied). Similarly, a plaintiff is not required to delineate in her pleadings the evidence upon which she relies to establish her asserted cause of action. *See Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988).

assert with specificity, the actions or statements made by each separate [appellee] which she alleges constitute a willful and intentional interference[;]

assert the basic facts supporting the requisite elements of her conspiracy claim[; and]

plead with specificity the overt acts she alleges, as to each [appellee] constitute an unlawful or tortious act[.]

In her responsive supplemental pleading, Isbell identified two contracts: the Interim Contract and the Charter Performance Contract. With regard to the Interim Contract, she asserted that SAISD, Russell, and Rogers "set into motion the utilization" of the "Termination Provision" of that contract, and thereby "completed the [f]iring of [Isbell]." With regard to the Charter Performance Contract, Isbell asserted that SAISD, Russell, and Rogers "(a) failed to perform any of the required evaluations of [Isbell], and (b) completely ignored the investigation, due process and action on performance contract provisions as set forth in the Charter Performance Contract," referencing Article V of the contract. (Footnotes omitted).

Isbell specifically stated that appellees "knowingly induced SAISD and the other Founders to manipulate and breach their respective contract obligations under the Interim Contract and the Charter Performance Contract." More generally, in addition to reciting the elements of tortious interference, Isbell alleged, in relevant part:

26. As set forth in the . . . GENERAL BACKGROUND of the Petition, with the addition of the facts set forth herein, the actions taken by Defendants Russell, MSC, and Rogers as to the Coup, the Firing (with regards to the Interim Contract), and the failures to act under the Charter Performance Contract:

(a) were undertaken with actual knowledge that [Isbell] had a contractual relationship with SAISD, whereby [Isbell] was serving as principal of CAST Tech under the Interim Contract

19

and the Charter Performance Contract;

(b) were intentionally and willfully undertaken to remove [Isbell] as principal of CAST Tech and to install Alcala in place of [Isbell], leading the way for the ultimate appointment of Defendant Russell as the Executive Director and Defendant Rogers as the Board President;

(c) knowingly induced SAISD and the other Founders to manipulate and breach their respective contract obligations under the Interim Contract and the Charter Performance Contract;

(d) proximately caused [Isbell] to be injured by the wrongful removal of [Isbell] as principal of CAST Tech; and

(d)[9] have resulted in extreme loss and damages to [Isbell].

27. As a result, Defendants Russell, MSC, and Rogers have intentionally and tortiously interfered with [Isbell's] contractual relationships, and[] are each liable to [Isbell] for all actual and consequential damages, for which [she] now sues.

Isbell defined both Russell and Rogers as "Founders" of CAST Tech. Isbell qualified her factual allegations against appellees by stating that "[b]ecause Defendants Russell and Roger's role in the Coup, the Firing, and the failure to follow the Charter Performance Contract was, by definition, behind the scenes, more specific evidence of such actions can be revealed only through discovery in this matter." Nevertheless, Isbell alleged that Russell and Rogers:

(a) [N]ever did truly let go of the marionette strings directing CAST Tech from behind the scenes, (b) never intended for [Isbell] to have any meaningful responsibilities for CAST Tech once CAST Tech was formed, (c) misrepresented to [Isbell] the true duties that Defendants Russell and Rogers would allow [Isbell] to exercise as the principal of CAST Tech, and (d) fully intended to arrange for the replacement of [Isbell] once CAST Tech was fully formed. . . .

[U]sed their social positions, influence, and network of key individuals in

9 This subsection was mistakenly designated as an additional category "(d)" in the original.

San Antonio, including their relationship with the other Founders, to get rid of [Isbell]. . . .

[N]ot only knew of the Interim Contract, but were instrumental in getting SAISD to enter into the Interim Contract with [Isbell]. . . .

[W]ere very much aware of, and acquainted with, the Charter Performance Contract and its relationship to the Interim Contract with [Isbell]. . . .

[S]et into motion, in conjunction with SAISD, the Coup and the Firing of Dr. Isbell. . . .

Working in concert with the administration of SAISD . . . assisted with the planning and implementation of the Coup and the Firing. . . .

Arrange[d] for [Alcala] to be named as the replacement for [Isbell] even before the Firing of [Isbell] was completed. . . .

Knowing that payment to [Isbell] was through the Interim Contract, . . . . arranged for the Coup and the Firing, which left [Isbell] with no income. . . .

[S]et into motion the utilization of the [Termination Provision] from the Interim Contract. . . .

[C]ompleted the Firing of [Isbell] . . . .

[T]o ensure that [Isbell] was completely gone, . . . (a) failed to perform any of the required evaluations of [Isbell], and (b) completely ignored the investigation, due process and action on performance contract provisions as set forth in the Charter Performance Contract. . . .

(Internal footnotes omitted). Isbell thus asserted that, through these machinations, Russell was appointed as the Executive Director of the CAST Tech network of schools with SAISD, Rogers was appointed as the Board President of the SAISD CAST Tech network of schools, and thus they "finally obtained what each always wanted: a program that would be governed by SAISD through [their] hands . . . ." In terms of allegations against MSC, Isbell states that Russell "undertook many of the foregoing actions while acting under her umbrella company," MSC, but that "instead of shielding [Russell]," her

21

actions "pushed [MSC] out in the open, liable in its own capacity as well for [Russell's] actions."

We turn to Isbell's conspiracy cause of action. The agreed order required Isbell to "replead and assert the basic facts supporting the requisite elements of her conspiracy claim," and to "plead with specificity the overt acts she alleges, as to each Defendant, constitute an unlawful or tortious act." In connection with this cause, Isbell referenced the foregoing facts and actions, and specifically pleaded:

> 28.    As set forth in the . . . GENERAL BACKGROUND of the Petition, with the addition of the facts set forth herein, the actions taken by Defendants Russell, MSC, and Rogers as to the Coup, the Firing (with regards to the Interim Contract), and the failures to act under the Charter Performance Contract, all the while working with SAISD and the other Founders:
>
> (a)    were the actions of two or more persons;
>
> (b)    were intentionally and willfully undertaken to remove [Isbell] as principal of CAST Tech and to install Alcala in place of [Isbell], leading the way for the ultimate appointment of Defendant Russell as the Executive Director and Defendant Rogers as the Board President;
>
> (c)    knowingly induced SAISD and the other Founders to manipulate and breach their respective contract obligations under the Interim Contract and the Charter Performance Contract;
>
> (d)    represent a common "meeting of the minds" as to the taking of the foregoing actions;
>
> (e)    were unlawful and overt acts intended to harm [Isbell];
>
> (f)    proximately caused [Isbell] to be injured by her wrongful removal as principal of CAST Tech; and
>
> (g)    have resulted in extreme loss and damages to [Isbell].
>
> 29.    As a result, Defendants Russell, MSC, and Rogers, have conspired

to harm [Isbell] and are each liable to [Isbell] for all actual and consequential damages, for which [Isbell] now sues.

Based on the foregoing, we conclude that Isbell's supplemental pleading met each of the specific requirements included in the agreed order.[10] Thus, Isbell met appellees' alleged "heightened pleading standard." Further, and more broadly, the agreed order expressly incorporated a "fair notice" standard, and Isbell's supplemental pleading provided fair notice of the essential factual allegations, the claims, and the relief sought. *See Montelongo*, 622 S.W.3d at 300; *Kinder Morgan SACROC, LP*, 622 S.W.3d at 849. Appellees have not explained how Isbell's allegations fail to sufficiently place them on notice that Isbell is suing them for tortious interference and conspiracy, or how her pleadings have not provided them with sufficient information to prepare a defense to her lawsuit. *See Tex. Dep't of Transp.*, 625 S.W.3d at 61; *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 224–225; *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 896.

## C. Summary

Isbell's "Plaintiff's Supplement No. 2 to First-Amended Petition" met the requirements of the agreed order and provided fair notice of her claims against appellee. In short, Isbell's pleadings are sufficiently specific and plead causes of action for tortious interference and conspiracy. *See Baylor Univ.*, 221 S.W.3d at 635. Accordingly, we conclude that the trial court erred in dismissing Isbell's claims. We sustain Isbell's fourth

---

[10] The "fair notice" pleading standard is incorporated in the rules of civil procedure. TEX. R. CIV. P. 45(b); *id.* R. 47(a). The rules of procedure "are not to be ignored by agreements of courts and counsel to operate contrary thereto and in violation thereof." *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 872 (Tex. 1973); *see also Outback Steakhouse of Fla., Inc. v. Reneau*, No. 04-01-00469-CV, 2002 WL 22045, at *3 (Tex. App.—San Antonio Jan. 9, 2002, no pet.) (mem. op.). "Courts and counsel may not by agreement operate contrary to and in violation of the rules. The court and the parties should adhere to the rules and the court has no power, where no discretion is reserved, to suspend or modify any rule." *Methodist Hosps. of Dall. v. Corp. Communicators, Inc.*, 806 S.W.2d 879, 884 (Tex. App.—Dallas 1991, writ denied).

issue. Having done so, we need not reach Isbell's first three issues.[11] *See* TEX. R. CIV. P. 47.4.

**D.    Response to Dissent**

The dissenting memorandum opinion concludes that Isbell's pleadings did not conform with the agreed order, and thus the dissent would affirm the trial court's judgment. According to the dissent, Isbell did not provide appellees with "fair notice" of her claims sufficient to enable appellees to prepare a defense to her lawsuit. However, the dissenting memorandum opinion further concludes that Isbell's pleadings "fail to allege facts that would support the pleaded causes of action" or that the facts alleged otherwise "affirmatively negate" Isbell's claims.

We respectfully disagree with this analysis. As detailed in this memorandum opinion, Isbell's pleadings, on their face, provide facts that would support her alleged causes of action and her pleadings do not affirmatively negate her claims. Based on the record provided, Isbell has made a good faith effort to respond to appellees' special exceptions, appellees have not further addressed any alleged inadequacies in the pleadings, and any alleged defects in Isbell's supplemental pleadings are not patently incurable. *See Gallien*, 209 S.W.3d at 863; *Humphreys*, 938 S.W.2d at 753; *Albright*, 859 S.W.2d at 582. In these circumstances, whether Isbell's claims are ultimately meritorious

---

[11] As stated previously, the trial court's order dismissed Isbell's claims with prejudice. "Generally, a trial court cannot dismiss a plaintiffs' entire case with prejudice if the pleadings state a valid cause of action, but are vague, overbroad, or otherwise susceptible to valid special exceptions." *Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 508 (Tex. App.—Corpus Christi–Edinburg 1992, no writ). "The proper remedy is to dismiss without prejudice." *Id.* (citing *Hajdik v. Wingate*, 753 S.W.2d 199, 202 (Tex. App.—Houston [1st Dist.] 1988), *aff'd on other grounds*, 795 S.W.2d 717 (Tex. 1990)); *see Gallien v. Washington Mut. Home Loans, Inc.*, 209 S.W.3d 856, 862–63 (Tex. App.—Texarkana 2006, no pet.). Given our disposition of this case, we need not further address this matter.

is an issue that we do not address or resolve at this stage of the litigation. *See, e.g.*, *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994) ("Summary judgment based on a pleading deficiency is proper if a party has had an opportunity by special exception to amend and fails to do so, or files a further defective pleading."); *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974) (recognizing that "a party may plead himself out of court" or "may plead facts which affirmatively negate his cause of action," and stating that "[i]n such instance it is proper to grant the defendant's motion for summary judgment"); *see also* Tex. R. Civ. P. 91a; *In re Shire PLC*, 633 S.W.3d 1, 25 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]) ("In summary, then, Rule 91a establishes a dismissal procedure that falls between the special exception procedure under Rules 90 and 91 and summary judgment procedure under Rule 166a.").

## V. CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.


GINA M. BENAVIDES
Justice

Dissenting Memorandum Opinion by Justice Silva.


Delivered and filed on the
6th day of January, 2022.